## STATE *vs.* JOHN H. SHIELDS.

Where the defendant conspired with several others to commit a rape, and they together seized the woman and carried her into an alley, and the defendant, after sexual intercourse with her, fled, it was held that the acts and declarations of the others after he left were admissible against him.

The court charged the jury in the case that there was no rule of law that there could be no rape unless the woman manifested the utmost reluctance and made the utmost resistance; but that the jury must be satisfied that there was no consent during any part of the act, and that the degree of resistance was an essential matter for them to consider in determining whether there was an honest and real want of consent. Held, upon motion of the defendant for a new trial, to be no error.

The court also charged that if the woman was intoxicated at the time, or so far under the influence of liquor that her faculties for observation and understanding were impaired, then her evidence alone and unsupported would not be sufficient for a conviction, but that if her testimony was so far corroborated by other circumstances in the case as to carry conviction to their minds beyond a reasonable doubt, and to the extent that the evidence of one full credible witness would do, it would be sufficient. Held to be no error.

And held that evidence that the woman had during the year preceding been several times intoxicated, was not admissible.

The court also charged that a common prostitute was a competent and might be a reliable witness; and that it was for the jury to judge, taking the habits of the woman and all the circumstances into consideration, whether she was a credible witness. Held to be no error.

The court also charged the jury, with regard to the effect of evidence of good character, that if the jury were satisfied beyond reasonable doubt of the guilt of the accused the question of character was of little consequence, but if upon all the evidence offered there existed a reasonable doubt it became one of great importance, because it tended not only to rebut the presumption of guilt growing out of the facts proved, but to strongly fortify the presumption of

innocence which belongs to every person until proved guilty. Held that, while evidence of good character was to be considered by the jury in coming to any conclusion upon the case, yet the charge was not open to exception as conveying a different idea. It was to be understood as explaining merely the degree of weight to be given to the evidence of good character in its relation to the other evidence in the case.

While to constitute rape an actual penetration of the body of the woman is necessary, yet the least penetration is sufficient.

INDICTMENT for rape; brought to the Superior Court in New Haven County, and tried to the jury, on the plea of not guilty, before *Sanford, J.*

Upon the trial Ellen Warner, the complainant, testified that about eleven o'clock in the evening on which the offence was committed she went to the York House on Bridge street, in New Haven, kept by John Crawford, for the purpose of seeing his wife and her mother, that she staid there about an hour in a room adjoining the bar room, that the defendant and several others were there, who left just before she did, that she then started to go home, and immediately upon going into the street was seized by the defendant and several others, carried into an alley near by, and ravished by the defendant and by several of the others; that the defendant was the first to have connection with her, and that when he had done he ran away and she saw him no more. She was then asked what occurred after the defendant left. To this question the defendant objected, but the court admitted it upon the claim by the state that the evidence was to a part of one transaction, the ravishment having been planned by several of whom the defendant was one, and because circumstances occurred after the defendant left which tended to identify him as one of the guilty parties; and thereupon she testified to the circumstances attending the ravishment by the other parties, and all that occurred, so far as she could recollect, until she was found in a nearly senseless condition and taken to the police station.

The complainant testified that she was a married woman, having been married in October, 1874, since which time she had lived and was still living with her husband.

It was proved by the defendant, and not denied by the state,

that prior to the time of her marriage in 1874, the complainant had visited and lived at various houses of ill-fame, but there was no evidence showing that she had done so since her marriage.

The defendant introduced a witness to show that the complainant was on one occasion during the past year at the house of the witness intoxicated, and claimed to show by other witnesses other instances, during the past year and previously, of her intoxication, all of which was on objection by the State's Attorney excluded by the court, the defendant excepting.

The state offered as a witness Dr. Whittemore, who testified that he examined the witness the morning after the assault upon her and found her genital organs bruised, bloody, swollen, sensitive to the touch, and that she complained of a scalding sensation in the passage of urine. He was then asked—"From your examination did you form an opinion as to how the injuries to her genital organs were produced?" To this question the defendant objected, but the court admitted it, and the witness replied that he was of opinion "that they were produced by a forcible attempt at intercourse;" to which question and answer the defendant excepted. The same witness was also asked, against the objection of the defendant, "Did you from your examination form an opinion as to whether there had been penetration?" And answered: "My opinion was that penetration had taken place as far as the internal organs of generation, whether further or not I cannot from my examination say;" to which question and answer the defendant excepted.

The state called as a witness one Flaherty, who testified that after the affair was over he went up to the next corner, about two hundred and fifty feet from the place where the offence was committed, and found the defendant and one Frawley sitting on some steps in front of a store; that he spoke to them and said, "Those fellows ought to be arrested;" to which the defendant replied: "No, G-d d——n her, it serves her right; it will learn her better than to be caught in such a crowd again." To this evidence the defendant objected, but the court admitted it.

The defendant requested the court to charge the jury "that to constitute rape actual penetration of the body of the woman by the insertion into her of the private parts of the accused is absolutely necessary." The court charged as requested, but added, "but the least penetration is sufficient;" to which the defendant excepted.

The defendant also requested the court to charge the jury "that there is no rape unless the woman manifested the utmost reluctance and made the utmost resistance." The court in reference to this request charged as follows: "If by this is meant that you must be satisfied that the woman, according to your measure of her strength, used all the physical force in opposition of which she was capable, it is not the law, for there is no such rule of law. You must be satisfied that there was no consent during any part of the act, and the degree of resistance is an essential matter for you to consider in determining whether the alleged want of consent was honest and real;" to all which the defendant excepted.

The defendant also requested the court to charge the jury "that if this woman, the only person who says the accused was the guilty party, was intoxicated at the time, or was so far under the influence of liquor that her faculties for observation and understanding were impaired, then her evidence is not that of a full and competent witness, and a verdict of guilty should not be rendered on her testimony." The court charged the jury as requested, but inserted before the words "is not" and after the word "evidence" the words "alone and unsupported," added at the end of the request the word "alone," and then proceeded as follows:—"But if on the other hand, notwithstanding these conditions, her testimony is so far corroborated by other circumstances in the case as to carry conviction to your minds beyond reasonable doubt, and to the extent that the evidence of one full, credible witness would do, and is so equivalent to it, that is sufficient." To all which the defendant excepted.

The defendant requested the court to charge the jury "that if they should find that the woman was a common prostitute,

State *v.* Shields.

and of low, depraved and lewd habits, her evidence is not that of a full, competent and wholly reliable witness in a case like this." The court charged the jury in reference to this request as follows: "I cannot say this as a matter of law. A prostitute is a competent witness. She may be a credible witness, she may not be a credible witness. A witness may be of low, depraved and lewd habits and still be competent and credible. She may be competent and yet incredible. It is for the jury to judge, taking her habits and all the circumstances into consideration, whether such a witness is a credible or incredible witness." To all which the defendant excepted.

The court also charged the jury as follows: "Evidence has been offered to establish for the accused a good character. If the jury are satisfied, beyond all reasonable doubt, of the guilt of the party accused, the question of character is of little consequence; but if upon all the evidence there exists such reasonable doubt, the question of character becomes of great importance; because, if such good character be established, it tends not only to rebut the presumption of guilt growing out of the circumstances proved against him, but also strongly to fortify that presumption of innocence which rightfully belongs to every one accused of crime until proved guilty." To this charge the defendant excepted.

The jury having returned a verdict of guilty, the defendant moved for a new trial for error in the rulings and charge of the court.

*W. C. Robinson*, in support of the motion.

1. The court erred in admitting evidence as to the injuries perpetrated on the complainant by third persons after the defendant had gone away. This was certainly *res inter alios.* Anything done by the others which indicated Shields as the first ravisher might be shown; but a second forcible act of intercourse could not indicate the committer of the first. Rape is not a joint crime. The ravisher cannot be held responsible, in any degree, for subsequent rapes taking place in his absence. If any such relation as co-conspirator, or

principal in the second degree, or accessory, can exist in this case, it cannot be proved, in this way, in an indictment for one act of rape. There should be other counts covering that ground.

2. The court erred in excluding the evidence offered to show that the complainant was often intoxicated. *Christian* v. *The Commonwealth*, 23 Gratt., 954; *Brennan* v. *The People*, 14 N. York Supreme Ct., 171; *Woods* v. *The People*, 55 N. York, 515.

3. The court erred in charging that in rape the least penetration is sufficient. *Rex* v. *Gammon*, 5 Car. & P., 321.

4. The court erred in charging that resistance on the part of the complainant was not necessary, and that the presence or absence of resistance was material only upon the question of consent. This ignores one essential feature of the crime of rape. There must both be force, actual or constructive, on the part of the ravisher, and want of consent on the part of the woman. Otherwise a mere refusal on her part without resistance would be sufficient. 2 Swift Dig. (Rev. ed.,) 322; *Charles* v. *The State*, 6 Eng., 389; *Pleasant* v. *The State*, 8 id., 360; *Regina* v. *Sweenie*, 8 Cox C. C., 223; *Regina* v. *Mayers*, 1 Green C. R., 318, note; *People* v. *Brown*, 47 Cal., 447; *State* v. *Burgdorf*, 53 Misso., 65; *Christian* v. *The Commonwealth*, 23 Gratt., 954; *Strang* v. *The People*, 24 Mich., 1; *Cato* v. *The State*, 9 Fla., 163; *People* v. *Dohring*, 59 N. York, 381.

5. The court erred in refusing to charge the jury that if the complainant were so intoxicated that her faculties were impaired when the rape was committed, a verdict of guilty should not be rendered against the accused on her evidence alone. The accused had a right to this charge. The complainant was the only witness who testified to the identity of the accused. If she was so drunk at the time that her faculties of observation were impaired, she was not a full and competent witness, and her evidence was not sufficient to justify a conviction. The charge of the court was that a witness, otherwise unreliable, may be so corroborated as to make her evidence credible. This was not responsive to the request. It turned the mind of the jury away from the true question.

6.   The court erred in refusing to charge the jury that in a case of ·rape the evidence of the complainant, if she be a common prostitute, and of low, depraved and lewd habits, is not that of a full, competent, and wholly reliable witness. The accused had a .right to this charge.   The most pious and virtuous woman could not be more than a full, competent, and wholly reliable witness.   If a prostitute is equally so, for what. purpose is evidence of her unchastity admissible?   Is an impeached or infamous witness full, competent and wholly reliable?   But here again the court turned the attention of. the jury from this question by charging that her testimony, properly corroborated, might be credible.

7.   The court erred in charging the jury that good charac· ter, instead of being a fact to be considered by them in deter·. mining whether there was reasonable doubt, was a fact of importance only where the existence of reasonable doubt was already determined.   This is erroneous.   If it were correct, character would never be important.   For where there is no reasonable doubt of guilt the jury must convict.   Where there is such doubt they must acquit.   The true rule is that the jury must consider character as an element entering into their decision of the question whether reasonable doubt exists, *Regina* v. *Rowton*, 10 Cox C. C., 25; *Felix* v. *The State*, 18 Ala., 725; *Fields* v. *The State*, 47 id., 603, 605; *State* v. *McMurphy*, 52 Misso., 251, 253; *Harrington* v. *The State*, 19 Ohio S. R., 269; *Stewart* v. *The State*, 22 id., 478; *State* v. *Ashe*; 44 Cal., 288.   The rule as stated by the court is not only erroneous but inconsistent with itself, the latter portion contradicting the former and confusing the jury, when it should have been clearly and simply as above laid down.

*O. H. Platt*, State's Attorney, contra.

PARK, C. J.   We find no error in this case which entitles the defendant to a new trial.

It appears in the motion that all the rulings of the court in the admission and rejection of evidence, and in the charge to the jury, are made the subjects of complaint.   It would be a

waste of time to remark upon them all, as most of them are manifestly correct.

The defendant was on trial for a crime, which the state claimed to have proved was committed in fulfillment of a common purpose and design entered into between the defendant and several other persons who were present aiding and abetting him in the commission of it. The defendant ran away before the entire undertaking was accomplished. The state offered to prove what was done after the defendant had left, not for the purpose of showing that other crimes were committed by the other conspirators, but to prove that the defendant committed the particular crime laid to his charge. The court received the evidence, and we think committed no error by so doing. Suppose three or more persons should enter into a conspiracy to burn a building. It is arranged among them that $A$ shall fire the building, and the other conspirators stand guard in the meantime to prevent discovery. They go to fulfill their design, and each performs the task assigned him; but $A$, immediately after the fire is set, runs away, contrary to the expectation of the others. The others remain and perform various acts intended to cover up the crime. Now it is well settled that evidence of the entire transaction covered by the conspiracy, from its commencement to its termination by the departure of all the conspirators from the scene of the crime, is admissible against $A$ as well as against each of the other parties on their separate trials for the commission of the crime. The ruling of the court goes no farther than this, and is clearly correct.

All the remaining rulings of the court upon questions of evidence raised in the case are manifestly correct, and we pass them without comment.

The same is true of the instructions of the court to the jury, with perhaps two exceptions which we will notice.

The defendant requested the court to charge the jury, that to constitute the crime of rape it was necessary that the prosecutrix should have manifested the utmost reluctance, and should have made the utmost resistance. The court did not comply with this request, and the refusal to do so is made a ground for asking a new trial.

While it may be expected in such cases from the nature of the crime that the utmost reluctance would be manifested, and the utmost resistance made which the circumstances of a particular case would allow, still, to hold as matter of law that such manifestation and resistance are essential to the existence of the crime, so that the crime could not be committed if they were wanting, would be going farther than any well-considered case in criminal law has hitherto gone. Such manifestation and resistance may have been prevented by terror caused by threats of instant death, or by the exhibition of brutal force which made resistance utterly useless; and other causes may have prevented such extreme opposition and resistance as the request makes essential. The importance of resistance is simply to show two elements in the crime—carnal knowledge by force by one of the parties, and non-consent thereto by the other. These are essential elements, and the jury must be fully satisfied of their existence in every case by the resistance of the complainant, if she had the use of her faculties and physical powers at the time, and was not prevented by terror or the exhibition of brutal force. So far resistance by the complainant is important and necessary; but to make the crime hinge on the uttermost exertion the woman was physically capable of making, would be a reproach to the law as well as to common sense. Such a test it would be exceedingly difficult, if not impossible, to apply in a given case. A complainant may have exerted herself to the uttermost limit of her strength, and may have continued to do so till the crime was consummated, still a jury, sitting coolly in deliberation upon the transaction, could not possibly determine whether or not the limit of her strength had been reached. They could never ascertain to any great degree of certainty what effect the excitement and terror may have had upon her physical system. Such excitement takes away the strength of one, and multiplies the strength of another. The request in substance is as follows: that inasmuch as non-consent is to be proved by the resistance made, therefore, if the resistance falls short of the extremest limit that could have been made, the deficiency necessarily shows consent, and should be so charged as matter of law. The fallacy lies in

the assumption that the deficiency in such cases necessarily shows consent. If the failure to make extreme resistance was intentional, in order that the assailant might accomplish his purpose, it would show consent; but without such intent it shows nothing important whatsoever. The whole question is one of fact, and the court committed no error in so leaving it to the jury.

The remaining question which we shall notice arises on the following charge to the jury. "Evidence has been offered to establish for the accused a good character. If the jury are satisfied beyond all reasonable doubt of the guilt of the party accused, the question of character is of little consequence, but if upon all the evidence there exists such reasonable doubt, the question of character becomes of great importance, because if such good character be established, it tends not only to rebut the presumption of guilt, growing out of the circumstances proved against him, but also strongly to fortify that presumption of innocence which rightfully belongs to every one accused of crime until proved guilty."

By this charge the court merely informed the jury regarding the weight of the evidence of good character, in different views of the case. The evidence had been introduced for the jury to consider in connection with the other evidence; and they were told that evidence of good character was of little importance when opposed by evidence of so conclusive a nature as to leave no reasonable doubt of the guilt of the accused. They were to find the defendant guilty beyond all reasonable doubt, if they found him guilty; but, in coming to a conclusion, if the evidence of guilt was conclusive of the fact, then but little weight should be given to evidence of character, although it should be considered with the other evidence. It is true, as the defendant claims, that evidence of good character should be considered by the jury in coming to a conclusion, but the weight of the evidence would depend upon the weight of the other evidence in the case.

We do not advise a new trial.

In this opinion the other judges concurred.