STATE OF CONNECTICUT *v.* RONALD ALBERT
(SC 16059)

McDonald, C. J., and Borden, Palmer, Sullivan and Callahan, Js.

Argued February 16—officially released May 4, 2000*

*Suzanne Zitser*, assistant public defender, with whom was *Martin Zeldis*, assistant public defender, for the appellant (defendant).

*Carolyn K. Longstreth*, senior assistant state's attorney, with whom were *Anne F. Mahoney*, assistant state's attorney, and, on the brief, *James E. Thomas*, state's attorney, for the appellee (state).

*Opinion*

SULLIVAN, J. The dispositive issue in this certified appeal is whether the Appellate Court properly concluded that the trial court correctly had instructed the jury regarding the meaning of "sexual intercourse," as defined in General Statutes (Rev. to 1991) § 53a-65 (2),[1]

---

* May 4, 2000, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] General Statutes (Rev. to 1991) § 53a-65 (2) provides: " 'Sexual intercourse' means vaginal intercourse, anal intercourse, fellatio or cunnilingus between persons regardless of sex. Penetration, however slight, is sufficient to complete vaginal intercourse, anal intercourse or fellatio and does not require emission of semen. Penetration may be committed by an object manipulated by the actor into the genital or anal opening of the victim's body. Its meaning is limited to persons not married to each other."

under the facts of this case. The defendant, Ronald Albert, appeals from the judgment of the Appellate Court affirming his conviction by the trial court, rendered after a jury trial, of sexual assault in the first degree in violation of General Statutes (Rev. to 1991) § 53a-70 (a) (2),[2] and risk of injury to a child in violation of General Statutes (Rev. to 1991) § 53-21.[3] Because we hold that the Appellate Court properly concluded that the trial court correctly had instructed the jury, we affirm the judgment of the Appellate Court.[4]

The Appellate Court's opinion sets forth the following facts that the jury reasonably could have found. "On August 2, 1992, the defendant attended a picnic at Globe Hollow Pond in Manchester with the victim, N, age three, her mother, her father and her brother. [The victim] referred to the defendant, her godfather, as Uncle Ronnie. [The victim] testified that while she and the defendant were swimming, the defendant put his hand underneath [the victim's] bathing suit and touched her 'inside' her 'crotch' with his index finger. The touching caused pain and [the victim] screamed. After [the

---

[2] General Statutes (Rev. to 1991) § 53a-70 provides in relevant part: "(a) A person is guilty of sexual assault in the first degree when such person . . . (2) engages in *sexual intercourse* with a person under thirteen years of age." (Emphasis added.)

The term "sexual intercourse," for purposes of § 53a-70 (a) (2), is defined by § 53a-65 (2). See footnote 1 of this opinion.

[3] General Statutes (Rev. to 1991) § 53-21 provides: "Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

[4] The defendant also claims that, if we were to order a new trial on the first degree sexual assault charge, we would also be required to order a new trial on the risk of injury charge. Because we affirm the defendant's conviction of first degree sexual assault, we need not consider the second issue raised by the defendant. Accordingly, the defendant's conviction of risk of injury to a child is not affected by the outcome of this appeal.

victim] screamed, the defendant told her not to tell anyone about the touching. When [the victim] started crying, her father took her out of the water and brought her to her mother. While she was crying, [the victim] said 'bad Uncle Ronnie' several times. Physical examinations by physicians shortly thereafter revealed two scrapes on the inside fold of [one of] the labia majora[5] that were typical of recent sexual abuse." *State* v. *Albert*, 50 Conn. App. 715, 718, 719 A.2d 1183 (1998).

The following additional facts and procedural history are necessary to our disposition of this appeal. During cross-examination, defense counsel asked the victim's psychologist, Kevin R. Conter: "Did [the victim] indicate to you if she had any reaction to the touch at the time the touch was allegedly made?" Conter answered: "[The victim] said that it hurt."

The victim's pediatrician, Wanda Merced, testified that she treated the victim on August 4, 1992, two days after the incident in question. Merced testified that, in taking the victim's medical history, the victim had told Merced, in the presence of the victim's mother, that the defendant had touched her "private part." Merced testified that she observed two small scrapes on the victim's labia majora and that the labia majora constituted "the outside of the vagina." Merced further testified that the scrapes were "[a]t the entrance of the vagina," and that they "looked fresh" because "they bled . . . when [she] touched them" with a cotton swab. Merced testified that she had marked, on a diagram of the anatomy of the genital area of a female, the location on the victim's labia majora where she had observed the two scrapes. Merced further testified that, if the genital area, as shown in the diagram, were the face of a clock, the scrapes would be located between

[5] Webster's Third New International Dictionary defines labia majora as "the outer fatty folds bounding the vulva."

5:30 and 6 o'clock. Finally, Merced testified that, when she asked the victim during the August 4, 1992 examination how she got the scrapes, the victim answered that the defendant had touched her "private part."

Frederick B. Berrien, a physician who was qualified as an expert in the field of pediatrics, provided testimony in two areas of relevance to this case. First, Berrien provided expert testimony with regard to the physical structure of the female genital area, genital opening and vagina. To illustrate his testimony, Berrien used the diagram that Merced had used during her testimony. He drew a circle around the area on the diagram that he considered to be the genital area of a female and testified that the labia majora constituted the outermost border of that area. He testified that the labia majora are part of the female genital area and consist of folds of skin that "close over the opening to the vagina," but that the labia majora are not part of the vagina itself. Berrien also testified that, although the labia majora are not part of the genital opening,[6] the space between the labia was the beginning of the genital opening.[7] Finally, Berrien testified that, in order to consummate vaginal intercourse, penetration had to be made through all of the labia structures.[8]

---

[6] Berrien testified in relevant part:

"[Martin Zeldis, Defense Counsel]: Would you call the labia majora part of the genital opening?

"[Berrien]: The labia majora are part of the genitalia. The opening is between the two labia majora.

"[Mr. Zeldis]: So the answer would be the labia majora is not part of the genital opening?

"[Berrien]: The opening is a space and the labia are structures.

"[Mr. Zeldis]: So it's not part of an opening. Is that fair to say?

"[Berrien]: It's not part of the opening."

[7] Berrien testified in relevant part:

"[Anne Mahoney, Assistant State's Attorney]: Is the space between the labia the beginning of the genital opening?

"[Berrien]: Yes, it is."

[8] Berrien testified in relevant part:

"The Court: Just to the extent that it's helpful to the court, Dr. Berrien, there aren't too many sign posts around. You're aware that there are statutes.

Second, Berrien testified regarding the location of the scrapes on the victim that Merced had observed upon examination of the victim. He testified that the scrapes that Merced had noted were in the area of the victim's "posterior fourchette," which he defined as the "posterior position of . . . the labia majora." He testified that, if one were to visualize the genital area as the face of a clock, the scrapes "were located at about 5:30" and that "injuries in that area are . . . typically involved with sexual abuse." He further testified that, based on his review of the diagram on which Merced had pointed out the location of the two scrapes, the victim's injuries appeared to be on the inside of the fold of the labium majora. He stated that the history given by the victim and the scrapes observed by Merced were consistent with a finger going through the victim's genital opening.

Subsequent to Berrien's testimony, the trial court permitted the state to amend its information. The first count of the original information alleged that the defendant had committed sexual assault in the first degree in violation of § 53a-70 (a) (2) by "penetrat[ing] *the vagina* of a three . . . year old girl with his finger or fingers." (Emphasis added.) The second count of the original information alleged that the defendant had committed risk of injury to a child in violation of § 53-21 by "*vaginally penetrating* [the victim] with his finger or fingers." (Emphasis added.) The state amended the first count of the information to allege that the defendant had committed sexual assault in the first degree in violation of § 53a-70 (a) (2) by "penetrat[ing] *the*

Sexual intercourse is defined as vaginal intercourse. To consummate vaginal intercourse, does penetration have to be made through the genital opening?

"[Berrien]: Yes.

"The Court: And to consummate vaginal intercourse or to effectuate vaginal intercourse, does penetration have to be made through all of these labia structures?

"[Berrien]: Yes."

*labia majora* of the genitalia of a three . . . year old girl with his finger or fingers," and the second count to allege that the defendant had committed risk of injury to a child in violation of § 53-21 by "penetrat[ing] *the labia majora* of the genitalia of a three . . . year old child with his finger or fingers." (Emphasis added.)

After a jury trial, the jury returned a verdict of guilty on both counts of the information. Subsequently, the trial court rendered judgment in accordance with the jury's verdict and imposed a total effective sentence of fifteen years imprisonment, execution suspended after four years, and five years probation. The defendant appealed from the judgment of the trial court to the Appellate Court, which affirmed the trial court's judgment on both counts. See *State* v. *Albert*, supra, 50 Conn. App. 717. This certified appeal followed.[9]

I

The defendant claims that the trial court improperly instructed the jury on the meaning of the term sexual intercourse, as defined in General Statutes (Rev. to 1991) § 53a-65 (2).[10] The state claims that the trial court

[9] We granted the defendant's petition for certification to appeal, limited to the following issue: "Did the Appellate Court properly conclude that the trial court correctly instructed the jury regarding the meaning of 'sexual intercourse' under the facts of this case?" *State* v. *Albert*, 247 Conn. 954, 723 A.2d 810 (1999).

[10] The full text of the portion of the jury instruction that the defendant claims was improper provided: "Now, for purposes of this case, sexual intercourse means penetration into the genital opening and its meaning is limited to persons not married to each other. Our law further provides that penetration, however slight, is sufficient to complete sexual intercourse and does not require the emission of semen. Our law further provides that penetration may be committed digitally, that is, by the finger or fingers into the genital opening of the victim's body.

"Now, it was undisputed in the evidence presented that the victim in our case was three years old at the time of the alleged assault at Globe Hollow [Pond]. Now clearly, in our state, a three year old cannot marry and you may correctly assume that no marriage existed between the alleged victim and the defendant. It was further undisputed that no digital penetration of the victim's vagina occurred. The evidence presented by [Merced] and [Berrien] was that two scrapes were found on the labia majora of the victim's

properly instructed the jury on the meaning of this term. As both parties recognize, in order to determine whether the trial court correctly instructed the jury, we first must interpret the statute defining the term sexual intercourse, namely, § 53a-65 (2). The defendant argues that a "touching" of the labia majora cannot support a finding that sexual intercourse occurred by way of digital penetration of the genital opening. Rather, the defendant argues that, under the facts of this case, in order to penetrate the genital opening, there must be evidence "that the defendant put his finger beyond the labia majora . . . ." Finally, the defendant argues that "there was no evidence presented that the defendant did anything other than touch the surface of [the victim's] labia majora."

The state argues that digital penetration of the labia majora constitutes penetration of the genital opening and, therefore, is sexual intercourse within the meaning of § 53a-65 (2). The state also argues that the evidence supported the conclusion that there was penetration of the victim's labia majora, and refutes "any . . . claim [by the defendant] that the touching was a mere contact

genital opening. These scrapes and their locations are designated on [the diagram that Merced and Berrien used during their testimony], which you will have during your deliberations. You may consider the labia majora as an anatomical part of a woman's genital opening.

"Now, sexual assault in the first degree is a crime not requiring a specific intent. However, if you should conclude that there was a penetration and that the penetration of [the victim's] genital opening was accidental, inadvertent or by mistake, then you cannot return a verdict of guilty. To return a verdict of guilty, you must be satisfied that the elements comprising this crime have been proved beyond a reasonable doubt.

"Now, if you find beyond a reasonable doubt that the victim was under thirteen years of age and that the defendant digitally penetrated the victim's genital opening, then you will find the defendant guilty."

The defendant excepted to this jury instruction at trial by stating: "The first exception that I have to [the] court's charge is what we have discussed before. To the extent that the court's instructions indicate that penetration of the labia majora is sufficient to accomplish the crime of sexual assault in the first degree, we take exception to the court's instruction."

with the exterior surface of the labia." We agree with the state.

"Statutory interpretation is a matter of law over which this court's review is plenary. . . . In construing statutes, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *Doyle* v. *Metropolitan Property & Casualty Ins. Co.*, 252 Conn. 79, 84, 743 A.2d 146 (1999). "[A]lthough we recognize the fundamental principle that [penal] statutes are to be construed strictly, it is equally fundamental that the rule of strict construction does not require an interpretation which frustrates an evident legislative intent." (Internal quotation marks omitted.) *State* v. *Ledbetter*, 240 Conn. 317, 330, 692 A.2d 713 (1997).

We begin with the plain language of the statute. General Statutes (Rev. to 1991) § 53a-65 (2) provides in relevant part: " 'Sexual intercourse' means vaginal intercourse . . . between persons regardless of sex. *Penetration, however slight, is sufficient to complete vaginal intercourse* . . . and does not require emission of semen. *Penetration may be committed by an object manipulated by the actor into the genital . . . opening of the victim's body.* . . ." (Emphasis added.) We consider the two italicized portions of the definition of sexual intercourse particularly relevant to this appeal.

First, we consider the statute's provision that "[p]enetration, however slight, is sufficient to complete vaginal intercourse . . . ." General Statutes (Rev. to 1991)

§ 53a-65 (2). Although the plain language of the statute does not specify *what* must be penetrated,[11] the legislature, in using the phrase "[p]enetration, however slight," evinced an intent to incorporate, into our statutory law, the common-law least penetration doctrine. As the Appellate Court correctly noted: "We first encounter the notion that the least penetration is sufficient to complete the crime of rape in *State* v. *Shields*, 45 Conn. 256 (1877).[12] [In that case] [t]he defendant requested that the trial court charge the jury that to constitute rape actual penetration of the *body* of the woman by the insertion into her of the private parts of the accused is absolutely necessary. Id., 259. After charging as requested, the court added, but the least penetration is sufficient . . . . Id. Our Supreme Court affirmed the charge as correct. Id., 263." (Emphasis added; internal quotation marks omitted.) *State* v. *Albert*, supra, 50 Conn. App. 721.

The defendant argues that, in order to satisfy the element of penetration in §§ 53a-65 (2) and 53a-70 (a) (2), there must be evidence of penetration "through the labia structures, to the outer vagina," or, at least, penetration "beyond the labia majora to at least the

---

[11] Therefore, we agree with the dissenting opinion in *State* v. *Albert*, supra, 50 Conn. App. 715, to the extent that it acknowledges that "[t]he resolution of the defendant's claim requires [the court] to determine *what* must be penetrated." (Emphasis in original.) Id., 736 (*Hennessy, J.*, dissenting). As we discuss later in the text of this opinion, however, we disagree with that dissent to the extent that it suggests that reference to the least penetration doctrine in this case "does not advance the discussion"; id. (*Hennessy, J.*, dissenting); and to the extent that it concludes that "penetration of the *vagina*, however slight, is required to commit vaginal intercourse." (Emphasis added.) Id. (*Hennessy, J.*, dissenting).

[12] The least penetration doctrine has been part of our law prohibiting sexual assault since our decision in *Shields*. See, e.g., *State* v. *Dubina*, 164 Conn. 95, 97, 318 A.2d 95 (1972); *State* v. *Hickey*, 23 Conn. App. 712, 714, 584 A.2d 473, cert. denied, 217 Conn. 809, 585 A.2d 1233, cert. denied, 501 U.S. 1252, 111 S. Ct. 2894, 115 L. Ed. 2d 1058 (1991).

labia minora . . . ."[13] Neither *Shields*, its common-law progeny; see footnote 12 of this opinion; nor any case that the defendant has cited to in any jurisdiction, suggests that penetration "through the labia structures, to the outer vagina" or penetration "beyond the labia majora to at least the labia minora" is required to complete vaginal intercourse under the least penetration doctrine.[14]

On the contrary, in *State* v. *Shields*, supra, 45 Conn. 256, we upheld a jury charge that referred to "penetration of the *body*"; (emphasis added; internal quotation marks omitted) id., 259; and stated that "the least penetration is sufficient [to commit rape]." (Internal quotation marks omitted.) Id. We conclude that the public policy underlying our holding in *Shields*, namely, that the least penetration of the *body* is sufficient to commit rape, was to protect victims from unwanted intrusions into the interior of their bodies. The legislature endorsed this public policy through its codification of the phrase "[p]enetration, however slight" in § 53a-65 (2). Therefore, because penetration of the labia majora constitutes penetration of the body, we agree with the Appellate Court that "[t]he 'penetration, however slight' language of the statute is a common-law carryover that was designed to eliminate precisely the kind of claim that is made here. The common-law construction of rape was designed to punish the fact, not the degree, of penetration." *State* v. *Albert*, supra, 50 Conn. App.

---

[13] It is not entirely clear how much penetration the defendant argues is necessary to complete the element of penetration under §§ 53a-65 (2) and 53a-70 (a) (2). In his brief, the defendant argued that there must be mere penetration "beyond the labia majora," whereas he argued at oral argument that penetration must occur all the way "through the labia structures, to the outer vagina."

[14] Likewise, the dissenting opinion in *State* v. *Albert*, supra, 50 Conn. App. 715, does not cite any case that supports the proposition that penetration of the *vagina* is necessary to constitute penetration under the least penetration doctrine. See generally id., 736 (*Hennessy, J.*, dissenting).

724. We conclude that the phrase "[p]enetration, however slight"; General Statutes (Rev. to 1991) § 53a-65 (2); was intended to cover penetration of the labia majora.

We also note that other jurisdictions likewise have concluded, on the basis of the least penetration doctrine, that penetration of the labia majora is sufficient to establish the element of penetration. See, e.g., *Craig* v. *State*, 214 Md. 546, 547, 136 A.2d 243 (1957) (penetration of labia majora sufficient to prove rape); *State* v. *Wisdom*, 122 Or. 148, 161, 257 P. 826 (1927) (because any penetration of labia sufficient to prove rape, trial court need not charge jury that penetration must reach "into the labia of the female organ having mucous membrane"). See generally annot., 76 A.L.R.3d 163, 178–83 (1977) (reviewing numerous cases in which courts have held that penetration of labia is sufficient penetration to constitute rape).

The next sentence of General Statutes (Rev. to 1991) § 53a-65 (2), which provides in relevant part that "[p]enetration may be committed by an object manipulated by the actor into the *genital . . . opening* of the victim's body"; (emphasis added); further strengthens our conclusion that penetration of the labia majora is sufficient to constitute sexual intercourse. We begin by noting that this sentence includes digital penetration as a species of penetration that constitutes vaginal intercourse under § 53a-65 (2). See, e.g., *State* v. *Hermann*, 38 Conn. App. 56, 60, 658 A.2d 148, cert. denied, 235 Conn. 903, 665 A.2d 904 (1995). Therefore, because "[p]enetration, however slight"; General Statutes (Rev. to 1991) § 53a-65 (2); is sufficient to constitute vaginal intercourse, the text of General Statutes (Rev. to 1991) § 53a-65 (2) providing that "[p]enetration may be committed by an object manipulated by the actor into the *genital . . . opening* of the victim's body"; (emphasis added); means that digital penetration, however slight,

of the *genital opening*, is sufficient to constitute vaginal intercourse.[15]

We must then determine what the legislature intended by its use of the term "genital . . . opening." General Statutes (Rev. to 1991) § 53a-65 (2). We begin by noting that, although the statute does not expressly define the term genital opening, our "construction must accord with common sense and commonly approved usage of the language." (Internal quotation marks omitted.) *State* v. *Jason B.*, 248 Conn. 543, 550, 729 A.2d 760, cert. denied, 528 U.S. 967, 120 S. Ct. 406, 145 L. Ed. 2d 316 (1999). We also note that, when "a statute or regulation does not sufficiently define a term, it is appropriate to look to the common understanding of the term as expressed in a dictionary." (Internal quotation marks omitted.) *State* v. *Payne*, 240 Conn. 766, 771, 695 A.2d 525 (1997).

Under common usage of the language, the term genital opening means an opening associated with the genitals.[16] The word "genitals" means "genitalia"; Webster's

[15] We conclude in the text of this opinion that the phrase, "[p]enetration, however slight, is sufficient to complete vaginal intercourse"; General Statutes (Rev. to 1991) § 53a-65 (2); includes penetration of the labia majora within the definition of vaginal intercourse. In so concluding, we avoid the bizarre result that would occur were we to treat digital penetration differently than all other forms of penetration by necessitating mere penetration of the *genital opening* in cases involving digital penetration, but requiring slight penetration of the *vagina* in cases involving all other forms of penetration. "We decline to interpret the statute so as to lead to this bizarre and unintended result." *State* v. *Parra*, 251 Conn. 617, 631–32, 741 A.2d 902 (1999). In contrast, as the Appellate Court noted in this case, the interpretation offered above harmonizes the doctrine of least penetration with the statute's prohibition against the manipulation of an object into a victim's genital opening. See *State* v. *Albert*, supra, 50 Conn. App. 724. "[I]n ascertaining [legislative] intent, we deem the legislature to have intended to harmonize its enactment with existing common law and statutory requirements . . . ." (Internal quotation marks omitted.) *Stern* v. *Allied Van Lines, Inc.*, 246 Conn. 170, 179, 717 A.2d 195 (1998).

[16] Although there is evidence in the record to suggest that the trial court may have considered the phrase "genital or anal *opening*"; (emphasis added) General Statutes (Rev. to 1991) § 53a-65 (2); to mean genital *area* and anal

Third New International Dictionary; which means "the organs of the reproductive system; *esp*[*ecially*]: *the external genital organs.*" (Emphasis altered.) Id. Similarly, Taber's Cyclopedic Medical Dictionary defines genitals and genitalia as "[o]rgans of generation; reproductive organs," and states that the female "external genitalia collectively are termed the vulva or pudendum and include the . . . *labia majora*" and that the internal genitalia are "the two ovaries, fallopian tubes, uterus, and *vagina.*" (Emphasis added.) Taber's Cyclopedic Medical Dictionary (16th Ed. 1989). Thus, as the term "genitals" refers especially to the external genital organs, which include the labia majora, it would be unreasonable to conclude that when the legislature used the term genital opening, it meant to exclude the external genital organs and refer only to the internal genital organs such as the vagina.

"Opening" is defined in common usage as "something that is open . . . ." Webster's Third New International Dictionary. "Open," in turn, is defined as "spread out: *unfolded*: having the parts or surfaces laid back in an expanded position: not drawn together, folded, or contracted . . . ." (Emphasis added.) Id. We previously noted that the labia majora are defined as "the outer fatty *folds* bounding the vulva." (Emphasis added.) Id.; see footnote 5 of this opinion.

From these definitions, it can be deduced that: (1) the term "genitals" commonly refers to the external reproductive organs, which include, on a female, the

opening when it allowed the state to amend its information during the trial, the trial court's decision to allow the state to amend the information was proper in light of our conclusion that penetration of the labia majora is sufficient to constitute sexual intercourse, as that term is defined in § 53a-65 (2). Furthermore, the trial court correctly instructed the jury that digital penetration could be accomplished by penetration of the genital *opening*. See part II and footnote 10 of this opinion. The court never instructed the jury that penetration of the genital *area* would be sufficient to complete the element of penetration required for prosecution under § 53a-70 (a) (2).

labia majora; (2) the term "opening" means something that is unfolded or spread out; and (3) the labia majora are folds. Thus, we conclude that the opening between the folds, i.e., labia majora, is the genital opening and that the labia majora form the boundaries of the genital opening.[17] Moreover, because we have construed the term vaginal intercourse, as that term is used in § 53a-65 (2), to include digital penetration, however slight, of the *genital opening*; see text accompanying footnote 15 of this opinion; we conclude that digital penetration, however slight, of the *labia majora* is sufficient penetration to constitute vaginal intercourse under § 53a-65 (2).[18]

---

[17] We also note that the medical definition of labia majora provides further support for our conclusion. Stedman's Medical Dictionary defines labia as the "plural of labium" and defines labium "majus" or majora as "one of two rounded folds of integument forming the lateral boundaries of the pudendal cleft." Stedman's Medical Dictionary (26th Ed. 1995). "Pudendal" means "[r]elating to the external *genitals*"; (emphasis added) id.; and "pudendal cleft" is defined as "the cleft between the labia majora." Id. Cleft is defined as a "fissure." Id. Thus, it is clear that the labia majora form the boundaries of a fissure, or opening, associated with the female genitals.

In addition, the expert testimony given by Berrien supports this interpretation. Berrien was asked: "Is the space between the labia the beginning of the genital opening?" He responded: "Yes, it is." Footnote 7 of this opinion. Although Berrien testified that the labia majora are "not part of the [genital] opening"; footnote 6 of this opinion; it appears from his testimony that he simply meant that the labia majora formed the boundaries of the genital opening and the space between the labia is the genital opening. See footnotes 6 and 7 of this opinion. In addition, although Berrien answered yes to the court's question whether "penetration ha[s] to be made through all of these labia structures [to effectuate vaginal intercourse]"; footnote 8 of this opinion; it is unclear from the transcript whether, by reference to "all of these labia structures," Berrien understood the court to be asking about both the labia majora and the labia minora, or simply both of the labium majora.

[18] Our conclusion that penetration of the labia majora is sufficient penetration to constitute sexual intercourse is bolstered by the fact that the legislature, in defining the term sexual intercourse, as that term applies to digital penetration, did not use the phrase "penetration to the *outer vagina*," which the defendant argues is necessary to constitute sexual intercourse. Rather, the legislature utilized a more inclusive phrase, specifying that mere "[p]enetration . . . [of] the *genital . . . opening*"; (emphasis added) General Statutes (Rev. to 1991) § 53a-65 (2); is sufficient to constitute sexual intercourse.

The legislative history of § 53a-65 (2) provides further support for our conclusion. That history dates back to 1969, when "the legislature revised the penal code in accordance with recommendations by the commission to revise the criminal statutes (commission)." *State* v. *Desimone*, 241 Conn. 439, 456, 696 A.2d 1235 (1997). Public Acts 1969, No. 828, § 66 (P.A. 828), codified at General Statutes (Rev. to 1972) § 53a-65, statutorily defined, for the first time, the term sexual intercourse for purposes of our state's sexual assault statutes. Public Act 828 provides in relevant part: " 'Sexual intercourse' has its ordinary meaning and occurs upon any penetration, however slight. . . ." In discussing House Bill 7182, the bill that eventually was enacted as P.A. 828, Senator John F. Pickett stated that the bill statutorily "defines with modern language crime . . . so that, we no longer, as we at present must rely, simply on the common law, for definitions of our crimes." 13 S. Proc., Pt. 7, 1969 Sess., p. 3542. Thus, as we stated previously, because this court had held that the least penetration is sufficient to commit rape under the common law; see *State* v. *Shields*, supra, 45 Conn. 263; the legislature, in using the phrase "[p]enetration, however slight," evinced an intent to codify the common-law least penetration doctrine.

In addition, in its commentary on § 53a-65, the commission stated: "These definitions are taken largely from the New York Revised Penal Law." Commission to Revise the Criminal Statutes, Connecticut Penal Code Comments (1969) p. 25. Indeed, the relevant portion of the definition of sexual intercourse in P.A. 828 tracks the New York counterpart exactly. See N.Y. Penal Law § 130.00 (1) (McKinney 1967). The definition found in N.Y. Penal Law § 130.00 (1), in turn, originally derived from § 280 of the New York Penal Code of 1881. Therefore, because our statute was modeled after the New York statute, we find the interpretation of the phrase

"penetration, however slight" by the New York Court of Appeals to be particularly persuasive in construing the equivalent language in § 53a-65. See *State* v. *Havican*, 213 Conn. 593, 601, 569 A.2d 1089 (1990) (recognizing that, because " '[t]he drafters of the [Connecticut penal] code relied heavily upon . . . the penal code of New York,' " it is appropriate to look to New York statutory and case law for guidance in interpreting Connecticut Penal Code).

Our conclusion that the "common-law construction of rape was designed to punish the fact, not the degree, of penetration"; *State* v. *Albert*, supra, 50 Conn. App. 724; is supported by the construction of the phrase "penetration, however slight" in *People* v. *Crowley*, 102 N.Y. 234, 6 N.E. 384 (1886). In *Crowley*, the New York Court of Appeals concluded that the phrase "means nothing more than penetration of the private parts of the man into the person of the woman, and *no discussion is necessary or proper as to how far they entered.*" (Emphasis added.) Id., 237.

Public Acts 1975, No. 75-619, § 1 (P.A. 75-619), amended General Statutes (Rev. to 1972) § 53a-65 by providing in relevant part: " 'Sexual intercourse' means vaginal intercourse, anal intercourse, fellatio or cunnilingus between persons regardless of sex. Penetration, however slight, is sufficient to complete vaginal intercourse, anal intercourse or fellatio and does not require emission of semen. Penetration may be committed by an object manipulated by the actor into the genital or anal opening of the victim's body. . . ."[19] Thus, through P.A. 75-619, § 1, the legislature: (1) amended the definition of sexual intercourse to include anal intercourse, fellatio and cunnilingus, all of which previously had

---

[19] This definition of sexual intercourse is identical to the definition of sexual intercourse applicable in this case. See General Statutes (Rev. to 1991) § 53a-65 (2); footnote 1 of this opinion.

been statutorily defined as forms of "[d]eviate sexual intercourse"; General Statutes (Rev. to 1975) § 53a-65 (2);[20] (2) maintained the codification of the common-law least penetration doctrine; and (3) provided that the element of penetration could be established by proving that a defendant manipulated an object into the victim's genital opening.

The legislative history of Senate Bill 1519, the bill that eventually was enacted as P.A. 75-619, clearly indicates "that the purpose of changing the definition of sexual intercourse from 'having its ordinary meaning' was to include 'anal intercourse, fellatio and cunnilingus,' none of which had been encompassed under the expression 'ordinary meaning' of sexual intercourse. See 18 S. Proc., Pt. 7, 1975 Sess., pp. 3214–27." *State* v. *Siering*, 35 Conn. App. 173, 181–82, 644 A.2d 958, cert. denied, 231 Conn. 914, 648 A.2d 158 (1994). The term "vaginal" was inserted into the statute to distinguish what previously had been considered "ordinary" intercourse; see General Statutes (Rev. to 1975) § 53a-65 (1); from anal intercourse, fellatio and cunnilingus. As the defendant recognizes, the addition of the term "vaginal" to the definition of sexual intercourse in § 53a-65 did not change the meaning of that definition as it pertained to vaginal intercourse. Therefore, in adding the term "vaginal" to the definition of sexual intercourse, the legislature did not intend to create a requirement of penetration of the vagina in order for the defendant's conduct to constitute sexual intercourse. This conclusion is bolstered by the fact that the legislature maintained the phrase "[p]enetration, however slight" in the amended definition of sexual intercourse, and, as we have concluded previously, slight penetration does not require vaginal penetration.

---

[20] General Statutes (Rev. to 1975) § 53a-65 (2) provides in relevant part: " 'Deviate sexual intercourse' means . . . sexual contact between persons not married to each other consisting of contact between the penis and the anus, the mouth and the penis, or the mouth and the vulva . . . ."

With regard to the second relevant sentence in § 53a-65 (2), which includes, inter alia, digital penetration of the genital opening within the definition of sexual intercourse, there is nothing in the legislative history to support the defendant's argument that the legislature, in using the term genital opening, intended the statute to require that penetration occur "beyond the labia majora to at least the labia minora . . . ." Finally, we also note that our construction of §§ 53a-65 (2) and 53a-70 (a) (2), unlike that of the defendant, furthers one of the statute's principal objectives, namely, "to protect children from being sexually violated." (Internal quotation marks omitted.) *State* v. *Hermann*, supra, 38 Conn. App. 60.

Although we have rejected most of the defendant's arguments in the preceding analysis, we wish to address briefly the defendant's claim that a mere touching of the surface of the labia majora is not sufficient to constitute penetration under §§ 53a-65 (2) and 53a-70 (a) (2). As we previously indicated, we disagree with the defendant's suggestion that a defendant must put his finger or fingers "beyond the labia majora" for his conduct to fall within the definition of sexual intercourse in § 53a-65 (2). Even if we assume that the defendant's interpretation of § 53a-65 (2) is correct, however, there was evidence presented in this case from which a reasonable jury could have concluded that the defendant put his finger beyond the victim's labia majora. For example, the victim testified that the defendant touched "[i]nside" her crotch. In addition, Conter testified that the victim had indicated to him that the touching hurt her, Merced testified that the scrapes on the victim's labia majora bled when she examined the victim two days after the incident and Berrien testified that the history the victim had given and the scrapes observed by Merced were consistent with a finger penetrating the victim's genital opening. Therefore, we reject the

defendant's claim that "there was no evidence presented that the defendant did anything other than touch the surface of [the victim's] labia majora." On the contrary, a reasonable jury could have inferred, based on the foregoing evidence, that the defendant's finger entered the victim with some force and passed beyond the actual location of the scrapes on the victim's labia majora.

II

Having construed the applicable definition of sexual intercourse in § 53a-65 (2), we now review the defendant's challenge to the following portion of the jury instructions. The trial court instructed the jury in relevant part: "Now, for purposes of this case, sexual intercourse means penetration into the genital opening . . . . The evidence presented by [Merced] and [Berrien] was that two scrapes were found on the labia majora of the victim's genital opening. These scrapes and their locations are designated on [the diagram that Merced and Berrien used during their testimony], which you will have during your deliberations. You may consider the labia majora as an anatomical part of a woman's genital opening. . . . Now, if you find beyond a reasonable doubt that the victim was under thirteen years of age and that the defendant digitally penetrated the victim's genital opening, then you will find the defendant guilty."

The defendant argues that the portion of the jury instruction stating that the labia majora are part of the genital opening and that the scrapes found on the victim's labia majora constituted evidence of "penetration" was improper and harmful because it provided an incorrect definition of an essential element of the crime of first degree sexual assault. The defendant further claims that the Appellate Court improperly concluded that the jury instructions were correct because

the instructions obliterate the distinction between sexual intercourse, which is defined in § 53a-65 (2), and sexual contact, which is defined in § 53a-65 (3).[21] Whereas sexual intercourse is a necessary element of first degree sexual assault; see General Statutes (Rev. to 1991) § 53a-70; footnote 2 of this opinion; sexual contact is a necessary element of fourth degree sexual assault; see General Statutes § 53a-73a; and in some prosecutions for third degree sexual assault. See General Statutes § 53a-72a (1).

The state argues, to the contrary, that that portion of the trial court's instructions with which the defendant takes issue was factually and legally correct and could not have misled the jury. The state also argues that the Appellate Court's conclusion with respect to the propriety of that portion of the instructions does not eliminate the distinction between sexual intercourse and sexual contact. We agree with the state.

"Our analysis begins with a well established standard of review. When reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the

---

[21] General Statutes § 53a-65 (3) provides: " 'Sexual contact' means any contact with the intimate parts of a person not married to the actor for the purpose of sexual gratification of the actor or for the purpose of degrading or humiliating such person or any contact of the intimate parts of the actor with a person not married to the actor for the purpose of sexual gratification of the actor or for the purpose of degrading or humiliating such person."

The term "intimate parts" is defined in General Statutes § 53a-65 (8) as "the genital area, groin, anus, inner thighs, buttocks or breasts."

instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper. . . . *State* v. *Denby*, 235 Conn. 477, 484–85, 668 A.2d 682 (1995). [I]n appeals involving a constitutional question, [the standard is] whether it is reasonably possible that the jury [was] misled. . . . *State* v. *Figueroa*, 235 Conn. 145, 170–71, 665 A.2d 63 (1995). . . . *State* v. *Delgado*, 247 Conn. 616, 625, 725 A.2d 306 (1999).

"In determining whether it was . . . reasonably possible that the jury was misled by the trial court's instructions, the charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding [it] to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied . . . is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result. . . . *State* v. *Prioleau*, 235 Conn. 274, 284, 664 A.2d 743 (1995) . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Griffin*, 251 Conn. 671, 713–14, 741 A.2d 913 (1999).

We first consider the defendant's argument that it was improper for the trial court to have instructed the jury that it "may consider the labia majora as an anatomical part of a woman's genital opening." The defendant argues that this instruction was improper because the labia majora are not part of the genital opening. We disagree.

We concluded in part I of this opinion that the opening between the labia majora is the genital opening, as that term is used in § 53a-65 (2), and that the labia majora form the boundaries of the genital opening. The boundaries of an opening commonly are thought of as part

of the opening. For example, a doorjamb defines the boundaries of a door opening, and a jamb is "an upright piece or surface forming the side of an opening . . . ." Webster's Third New International Dictionary. A side of an opening is, obviously, part of the opening. We also note that appellate courts in other jurisdictions commonly have referred to the labia as an opening that can be entered. See, e.g., *Holmes* v. *United States*, 171 F.2d 1022, 1023 (D.C. Cir. 1948) ("[t]he crime of rape is committed if [the male organ] enters only the labia of the female organ"); *Short* v. *State*, 564 N.E.2d 553, 559 (Ind. App. 1991) (any "entering of the . . . labia" is sufficient to complete sexual intercourse).[22] Therefore, it was not improper for the trial court to have referred to the labia majora as part of the genital opening. Although it technically might have been more correct for the trial court to have stated that *the space* between the labia majora is the genital opening, rather than stating that the labia majora constitute part of the genital opening; see footnote 10 of this opinion; "the charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement . . . ." (Internal quotation marks omitted.) *State* v. *Griffin*, supra, 251 Conn. 714. Thus, we conclude that it was not reasonably possible that the jury was misled by the trial court's instructions that the labia majora are part of the genital opening.

We next consider the defendant's argument that it was improper for the trial court to have instructed the jury that "[t]he evidence presented by [Merced] and [Berrien] was that two scrapes were found on the labia majora of the victim's genital opening. . . . Now, if you

---

[22] We also note that medical experts refer to the labia as an opening that can be penetrated. See, e.g., J. Hitt, "The Second Sexual Revolution," N.Y. Times, February 20, 2000, § 6 (Magazine), p. 36 (quoting Irwin Goldstein, urologist, as stating that "[t]he man needs a sufficient axial rigidity so his penis can *penetrate through labia*" [emphasis added; internal quotation marks omitted]).

find beyond a reasonable doubt that . . . the defendant digitally penetrated the victim's genital opening, then you will find the defendant guilty." The defendant argues that this part of the instruction was improper because: (1) the labia majora are not part of the genital opening; and (2) the jury may have understood the trial court's instructions on the element of penetration to mean that it was to decide whether the defendant pierced the victim's skin, rather than determining whether the defendant penetrated the victim by placing his finger in the victim's genital opening.

The defendant's first argument fails because we have concluded previously that it was not improper for the trial court to have instructed the jury that the labia majora are part of the genital opening. His second argument fails because it is obvious from the trial court's instructions that the jury was instructed to consider whether the defendant had put his finger through the victim's genital opening. See footnote 10 of this opinion. For example, the trial court instructed the jury: "Our law . . . provides that penetration may be committed digitally, that is, by the finger or fingers into the genital opening of the victim's body." In contrast, there is nothing in the trial court's jury instructions that would have caused a reasonable juror to conclude that, in order to determine whether penetration occurred, he or she must determine whether the defendant had punctured the victim's skin and tissue.

Finally, we consider the defendant's argument that the jury instructions eliminate the distinction between sexual intercourse, as defined in § 53a-65 (2); see footnote 1 of this opinion; and sexual contact, as defined in § 53a-65 (3). See footnote 21 of this opinion. The defendant argues that, "[i]f the trial court's instructions are deemed correct, there would never be a contact

with the 'genital area'[23] of a female that did not also constitute . . . penetration of the 'genital opening.' " We disagree.

We begin by noting that sexual intercourse, as defined in § 53a-65 (2), requires *penetration* whereas sexual contact, as defined in § 53a-65 (3), requires mere *contact*. The trial court instructed the jury, "if you find beyond a reasonable doubt . . . that the defendant digitally *penetrated* the victim's genital opening, then you will find the defendant guilty." (Emphasis added.) Footnote 10 of this opinion. Thus, the trial court properly instructed the jury that it was to convict the defendant only if it found that the defendant had *penetrated* the victim's genital opening. Notwithstanding the defendant's claim that "there was no evidence presented that the defendant did anything other than touch the surface of [the victim's] labia majora,"[24] the jury based its verdict on a finding of penetration of the genital opening, not mere contact with the genital area. Compare General Statutes (Rev. to 1991) § 53a-65 (2) with General Statutes (Rev. to 1991) § 53a-65 (8). Accordingly, we conclude that the Appellate Court properly concluded that the trial court correctly had instructed the jury in this case.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

---

[23] See footnote 21 of this opinion for the relevant text of General Statutes § 53a-65 (8).

[24] We note that we rejected this characterization of the evidence in part I of this opinion.