## STATE OF CONNECTICUT *v.* ROY AMBROS SCOTT (AC 17742)

Spear, Hennessy and Sullivan, Js.

---

Argued April 26—officially released November 9, 1999

*Jon L. Schoenhorn*, for the appellant (defendant).

*Timothy J. Sugrue*, senior assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Dennis J. O'Connor*, senior assistant state's attorney, for the appellee (state).

*Opinion*

SPEAR, J. The defendant, Roy Ambros Scott, appeals from the judgment of conviction, rendered after a jury trial, of aggravated sexual assault in the first degree

in violation of General Statutes § 53a-70a (a) (1)[1] and attempted sexual assault in the first degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-70 (a) (1).[2] The defendant claims that (1) there was insufficient evidence to support the conviction of either crime, (2) the trial court improperly failed to instruct the jury on the essential element of penetration with respect to the charge of attempted sexual assault, and (3) the trial court improperly failed to instruct the jury on the defense of abandonment. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On the evening of December 31, 1995, the victim, her friend, Zelda Brown, Brown's fiance, Flide Gray,

[1] General Statutes § 53a-70a (a) provides in relevant part: "A person is guilty of aggravated sexual assault in the first degree when such person commits sexual assault in the first degree as provided in section 53a-70, and in the commission of such offense (1) he uses or is armed with and threatens the use of or displays or represents by his words or conduct that he possesses a deadly weapon . . . ."

[2] General Statutes § 53a-49 provides in relevant part: "(a) A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime.

"(b) Conduct shall not be held to constitute a substantial step under subdivision (2) of subsection (a) of this section unless it is strongly corroborative of the actor's criminal purpose. . . .

"(c) When the actor's conduct would otherwise constitute an attempt under subsection (a) of this section, it shall be a defense that he abandoned his effort to commit the crime or otherwise prevented its commission, under circumstances manifesting a complete and voluntary renunciation of his criminal purpose."

General Statutes § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person . . . ."

and the defendant met at the victim's apartment in East Hartford for cocktails. After a few drinks, the group proceeded in Gray's car to a social club in Hartford to celebrate New Year's Eve. Shortly before the club closed at 2 a.m., the victim paged her boyfriend, William Bruce Maddox, and, when he returned her call, asked him to meet her later at her apartment. As the victim left the club with Gray and the defendant, the defendant produced a nine millimeter Beretta semiautomatic pistol and fired five or six shots into the air.

When they arrived at the victim's apartment, the defendant asked if he could use the bathroom. After initially refusing the request, the victim reluctantly agreed. Gray waited downstairs. After using the bathroom, the defendant told the victim that he liked her and kissed her, which she initially returned. As the defendant continued kissing, hugging and grabbing her, however, she told him to "chill" and "stop." He nonetheless persisted, forcing her into her bedroom as she continued to protest.

The victim was unable to push past the defendant, and they fell onto the mattress on the floor. The defendant pulled down the victim's pants and underwear to her ankles, undid his trousers, produced a condom and told the victim to put it on his penis, which she refused to do. He inserted his penis into her vagina anyway. After engaging in vaginal intercourse with her for some time, he removed his penis from her vagina, grabbed her by the hair and, forcing her head toward his crotch, told her to "lick me, lick me." The victim refused and began screaming and crying. The defendant then recommenced vaginal intercourse.

Shortly thereafter, the victim heard Maddox's car, which was very noisy, and told the defendant that Maddox would "kick his ass." Grabbing his pistol, which was on the floor, the defendant said that Maddox "ain't

gonna do shit," looked out the window and returned to the mattress after Maddox drove away. Maddox, seeing the darkened apartment, had assumed that the victim was not yet home and left. The defendant again resumed intercourse with the victim. He still held the gun, although it was not directly pointed at the victim's head. Rather, the gun was lying near the side of her head. After completing sexual intercourse, the defendant dressed and left. The police arrested him after receiving a complaint from the victim.

I

The defendant first claims that the state failed to produce sufficient evidence to support his conviction of aggravated sexual assault in the first degree. The defendant concedes that the elements of sexual assault were satisfied but argues that the aggravating element was not satisfied because the state failed to prove that he possessed a handgun during the sexual assault. We disagree.

Although the defendant failed to raise this claim at trial, our Supreme Court has stated that unpreserved sufficiency of the evidence claims satisfy the requirements of *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989),[3] and are therefore reviewable "because such claims implicate a defendant's federal constitutional right not to be convicted of a crime upon insufficient proof. See *State* v. *Adams*, 225 Conn. 270, 275–76 n.3, 623 A.2d 42 (1993)." *State* v. *Laws*, 37 Conn. App. 276,

---

[3] "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." *State* v. *Golding*, supra, 213 Conn. 239–40.

281, 655 A.2d 1131, cert. denied, 234 Conn. 907, 659 A.2d 1210 (1995).

"The standard of review of an insufficiency claim is twofold. We first review the evidence presented at trial, construing it in the light most favorable to sustaining the facts expressly found by the trial court or impliedly found by the jury. We then decide whether, upon the facts thus established and the inferences reasonably drawn therefrom, the trial court or the jury could reasonably have concluded that the cumulative effect of the evidence established the defendant's guilt beyond a reasonable doubt. *State* v. *Milardo*, 224 Conn. 397, 402–403, 618 A.2d 1347 (1993); *State* v. *Jarrett*, 218 Conn. 766, 770–71, 591 A.2d 1225 (1991); *State* v. *Weinberg*, 215 Conn. 231, 253, 575 A.2d 1003, cert. denied, 498 U.S. 967, 111 S. Ct. 430, 112 L. Ed. 2d 413 (1990). . . . *State* v. *Harris*, 227 Conn. 751, 757, 631 A.2d 309 (1993). The issue is whether the cumulative effect of the evidence was sufficient to justify the verdict of guilty beyond a reasonable doubt. . . . *State* v. *Adams*, [supra, 225 Conn. 276]." (Internal quotation marks omitted.) *State* v. *Jones*, 37 Conn. App. 437, 449, 656 A.2d 696, cert. denied, 233 Conn. 915, 659 A.2d 186 (1995).

The victim testified that during the sexual assault the defendant reached for his gun in response to the warning that Maddox would "kick his ass." The defendant continued to hold the gun after Maddox had driven off and while sexually assaulting the victim. Although not pointed at her head, the gun was next to her head. Moreover, the victim and Gray had witnessed the defendant fire five or six shots as they left the social club earlier that evening. Construing these facts in the light most favorable to sustaining the jury's findings and allowing reasonable inferences drawn therefrom, we conclude that the jury reasonably could have concluded that the gun was used in the commission of the sexual assault, as required by § 53a-70a (a) (1), and that the

defendant was guilty beyond a reasonable doubt of aggravated sexual assault in the first degree. We affirm the conviction of aggravated sexual assault in the first degree.

The defendant next claims that the evidence was insufficient to convict him of attempted sexual assault because he abandoned the attempt or, alternatively, he attempted only sexual contact[4] by imploring the victim to "lick" him, without expressly demanding fellatio, which requires penetration of the mouth. Neither claim has merit.

General Statutes § 53a-49 (c) provides that "[w]hen the actor's conduct would otherwise constitute an attempt under subsection (a) of this section, it shall be a defense that he abandoned his effort to commit the crime or otherwise prevented its commission, under circumstances manifesting a complete and *voluntary* renunciation of his criminal purpose." (Emphasis added.) Because the victim refused his request and started screaming and crying, the defendant's abandonment of the attempt was not voluntary and, therefore, this portion of the statute was not satisfied. Moreover, the defendant simply transferred his criminal effort to a similar objective, further vaginal intercourse. General Statutes § 53a-50 provides in relevant part that "[r]enunciation is not complete if it is motivated by a decision to . . . transfer the criminal effort to another but similar objective . . . ."

The defendant's claim that he attempted only sexual contact and not fellatio merits little discussion. Although he argues that his intent was to limit the

---

[4] General Statutes § 53a-65 (3) provides: " 'Sexual contact' means any contact with the intimate parts of a person not married to the actor for the purpose of sexual gratification of the actor or for the purpose of degrading or humiliating such person or any contact of the intimate parts of the actor with a person not married to the actor for the purpose of sexual gratification of the actor or for the purpose of degrading or humiliating such person."

contact to the victim's tongue touching his penis without having his penis ever penetrate her mouth, the jury was entitled to find that he did intend to force his penis into the victim's mouth.

## II

The defendant next claims that the trial court improperly failed to instruct the jury that penetration is an essential element of attempted sexual assault in the first degree. We disagree.

The defendant failed to preserve this claim at trial and now seeks review under *State* v. *Golding*, supra, 213 Conn. 239–40, or plain error review. See Practice Book § 60-5. The failure to instruct the jury on an essential element of an offense is an issue of constitutional magnitude because it may result in a due process violation that undermines the fairness of the trial. *State* v. *Coleman*, 48 Conn. App. 260, 270, 709 A.2d 590, cert. granted on other grounds, 245 Conn. 907, 718 A.2d 15 (1998). As the record in this case is adequate, we will afford *Golding* review to this issue.

"In reviewing a constitutional challenge to the trial court's instructions, we must consider the jury charge as a whole to determine whether it is reasonably possible that the instruction misled the jury. . . . The test is whether the charge as a whole presents the case to the jury so that no injustice will result." (Internal quotation marks omitted.) Id. On the basis of the entire charge, we conclude that it was not reasonably possible that the jury was misled and that the charge presented the case so that no injustice resulted.

In its instruction on aggravated sexual assault in the first degree, the court stated: "Sexual intercourse is defined in several ways in our statute. As it pertains in this count, it means vaginal intercourse. Penetration,

however slight, is sufficient to complete vaginal intercourse, and it does not require the emission of semen." Thereafter, as to the charge of attempted sexual assault in count two, the court instructed as follows: "Now, as to the underlying crime of sexual assault in the first degree, I just finished charging you on that particular crime as part of the first count. I don't think I need to repeat it at this point. I can tell you that my instruction to you on that is the same as I would instruct you on this, the second count, with two exceptions. . . . [T]he second distinction between count two and the first is that the sexual intercourse claimed in this count to have been attempted is fellatio rather than vaginal intercourse. And I would instruct you that fellatio is, of course, the act of obtaining sexual gratification by oral stimulation of the penis. Otherwise, the instructions that I have given you regarding sexual assault in the first degree apply equally to this, the second count."

Although the court did not specifically repeat the instruction that penetration is required to complete fellatio, it twice pointed out that the instructions on the first count applied to the second count, except for the type of intercourse charged. The court referenced its earlier instruction, in which it instructed that penetration, however slight, was sufficient to constitute vaginal intercourse, and reiterated that its earlier instruction applied equally to the second count. We believe that the court adequately instructed the jury on the element of penetration by incorporating by reference its instruction on the first count. We cannot conceive of the jury being misled in any way by the court's charge.

Our review of the charge as a whole leads us to conclude that the court adequately informed the jury that penetration was required to complete fellatio and, thus, presented the case to the jury so that no injustice resulted.[5]

---

[5] Because we conclude that the court's instruction was proper, the defendant's claim of plain error necessarily must fail.

## III

The defendant also claims that the trial court improperly failed to instruct the jury on the defense of abandonment. He did not request an instruction on the defense of abandonment of the attempted sexual assault. The defendant's argument that the court had a constitutional duty to instruct, sua sponte, on this claimed defense is unpersuasive. In *State* v. *Preyer*, 198 Conn. 190, 197, 502 A.2d 858 (1985), our Supreme Court stated that there is no "constitutional infirmity in failure to charge on such defenses as entrapment . . . or alibi." We are not persuaded that a sua sponte instruction on abandonment was required here, especially in view of the lack of evidence to support such a charge.

The judgment is affirmed.

In this opinion HENNESSY, J., concurred.

SULLIVAN, J., dissenting. Although I agree with the majority's holding with respect to the sufficiency of the evidence claims, I respectfully dissent from part II of the majority opinion because I conclude that the trial court improperly instructed the jury on attempted sexual assault in the first degree.

A constitutionally adequate charge must "[provide] the jury with a clear understanding of the elements of the crime and guidance for proper determination of whether those elements were present . . . ." *State* v. *Jenkins*, 40 Conn. App. 601, 607, 672 A.2d 969, cert. denied, 237 Conn. 918, 676 A.2d 1374 (1996). The elements of attempted sexual assault in the first degree are that "the defendant acted with the specific intent to commit sexual assault in the first degree which in turn included the intent to have sexual intercourse . . . and that the defendant took a substantial step in a course of conduct planned to culminate in his commission of the crime." (Citation omitted; internal quotation

marks omitted.) *State* v. *Milardo*, 224 Conn. 397, 403, 618 A.2d 1347 (1993).

The statutory definition of "sexual intercourse" includes fellatio. Penetration is an essential element of sexual assault by fellatio. General Statutes §§ 53a-70 and 53a-65;[1] *State* v. *Amarillo*, 198 Conn. 285, 289–90, 503 A.2d 146 (1986).

The jury charge did not inform the jury that penetration is an essential element of sexual assault by fellatio. The majority is persuaded that the instruction on attempted sexual assault sufficiently incorporated the elements of sexual assault such that the element of penetration need not be articulated with respect to sexual intercourse by fellatio.[2] The court stated that sexual

[1] General Statutes § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person . . . ."

General Statutes § 53a-65 provides in relevant part: "(2) 'Sexual intercourse' means vaginal intercourse, anal intercourse, fellatio or cunnilingus between persons regardless of sex. Its meaning is limited to persons not married to each other. *Penetration, however slight, is sufficient to complete vaginal intercourse, anal intercourse or fellatio and does not require emission of semen.* Penetration may be committed by an object manipulated by the actor into the genital or anal opening of the victim's body.

"(3) 'Sexual contact' means any contact with the intimate parts of a person not married to the actor for the purpose of sexual gratification of the actor or for the purpose of degrading or humiliating such person or any contact of the intimate parts of the actor with a person not married to the actor for the purpose of sexual gratification of the actor or for the purpose of degrading or humiliating such person. . . ." (Emphasis added.)

[2] The trial court instructed the jury with respect to the first count of aggravated assault as follows: "Sexual intercourse is defined in several ways in our statute. As it pertains in this count, it means vaginal intercourse. Penetration, however slight, is sufficient to complete vaginal intercourse, and does not require the emission of semen." The trial court then instructed the jury on the attempted sexual assault count: "I just finished charging you on [sexual assault] as part of the first count. I don't think I need to repeat it at this point. I can tell you that my instruction to you on that is the same as I would instruct you on this, the second count, with *two exceptions.* . . .

intercourse in the first count meant vaginal intercourse and that "[p]enetration, however slight, is sufficient to complete vaginal intercourse . . . ." The court then noted that the second count was distinct in that sexual intercourse meant fellatio rather than vaginal intercourse, and that "fellatio is, of course, the act of obtaining sexual gratification by oral stimulation of the penis." It is significant that the statutory definition of "sexual intercourse" comprises four acts, only three of which require penetration. See General Statutes § 53a-65 (2).

The defendant has argued that his order to "lick me" was not a request for sexual intercourse by fellatio. If we assume, arguendo, the truth of the defendant's assertion, his conduct would constitute sexual *contact* rather than sexual *intercourse*. See General Statutes § 53a-65 (3). On the basis of the court's defective charge, however, the jury could erroneously have concluded that an act that requires no penetration, such as licking, constituted fellatio. In other words, the jury could have believed the defendant's claim and would nonetheless have been compelled by the defective instruction to return a guilty verdict. To ensure a fair trial, the defendant was entitled to a jury charge that apprised the jury of the elements of the charged offense.

I must, therefore, conclude that the court improperly instructed the jury with respect to the charge of attempted sexual assault in the first degree. I would reverse the conviction on that count and remand the case for further proceedings. Consequently, I dissent.

---

[T]he *second distinction* between count two and the first is that the sexual intercourse claimed in this count to have been attempted is fellatio rather than vaginal intercourse. And I would instruct you that fellatio is, of course, the act of obtaining sexual gratification by oral stimulation of the penis." (Emphasis added.)