STATE OF CONNECTICUT *v.* ROY AMBROS SCOTT
(SC 16240)

Borden, Norcott, Katz, Palmer and Vertefeuille, Js.

---

Argued September 19, 2000—officially released July 3, 2001

*Jon L. Schoenhorn*, for the appellant (defendant).

*Timothy J. Sugrue*, senior assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Dennis J. O'Connor*, senior assistant state's attorney, for the appellee (state).

*Opinion*

PALMER, J. A jury found the defendant, Roy Ambros Scott, guilty of aggravated sexual assault in the first degree in violation of General Statutes § 53a-70a (a) (1)[1] and attempted sexual assault in the first degree in violation of General Statutes §§ 53a-70 (a) (1)[2] and 53a-

---

[1] General Statutes § 53a-70a provides in relevant part: "(a) A person is guilty of aggravated sexual assault in the first degree when such person commits sexual assault in the first degree as provided in section 53a-70, and in the commission of such offense (1) such person uses or is armed with and threatens the use of or displays or represents by such person's words or conduct that such person possesses a deadly weapon . . . ."

Subsection (a) of § 53a-70a was subject to technical amendments only in 1999. See Public Acts, Spec. Sess., June, 1999, No. 99-2, § 50. We, therefore, refer to the current revision for convenience.

[2] General Statutes § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person . . . ."

General Statutes § 53a-65 (2), which defines the term "sexual intercourse" for purposes of § 53a-70 (a), provides: " 'Sexual intercourse' means vaginal intercourse, anal intercourse, fellatio or cunnilingus between persons regardless of sex. Its meaning is limited to persons not married to each other. Penetration, however slight, is sufficient to complete vaginal intercourse, anal intercourse or fellatio and does not require emission of semen. Penetration may be committed by an object manipulated by the actor into the genital or anal opening of the victim's body."

49 (a) (2).[3] The trial court rendered judgment in accordance with the jury verdict,[4] and the defendant appealed to the Appellate Court, which affirmed the judgment of conviction, with one judge dissenting. *State* v. *Scott*, 55 Conn. App. 660, 669, 740 A.2d 441 (1999). We granted the defendant's petition for certification to appeal limited to the following issue: "Did the Appellate Court properly reject the defendant's claim that the [trial] court's instruction regarding [the penetration element of] attempted sexual assault in the first degree was constitutionally inadequate?" *State* v. *Scott*, 252 Conn. 918, 744 A.2d 439 (2000). We agree with the defendant that, contrary to the conclusion of the majority of the Appellate Court panel, the trial court's instruction on attempted sexual assault in the first degree was constitutionally infirm, thereby entitling the defendant to a new trial on that charge. Consequently, we reverse the judgment of the Appellate Court with respect to that charge.[5]

The Appellate Court opinion sets forth the following facts that the jury reasonably could have found. "On the evening of December 31, 1995, the victim, her friend, Zelda Brown, Brown's fiance, Flide Gray, and the defendant met at the victim's apartment in East Hartford for

---

[3] General Statutes § 53a-49 (a) provides in relevant part: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he . . . (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

[4] The trial court sentenced the defendant to a term of imprisonment of fifteen years, execution suspended after twelve years, for the offense of aggravated sexual assault in the first degree, and a consecutive term of imprisonment of eight years, execution suspended after four years, for the offense of attempted sexual assault in the first degree, for a total effective prison term of twenty-three years, execution suspended after sixteen years. The trial court also imposed a five year period of probation.

[5] The defendant's conviction for aggravated sexual assault in the first degree is not a subject of this appeal.

cocktails. After a few drinks, the group proceeded in Gray's car to a social club in Hartford to celebrate New Year's Eve. Shortly before the club closed at 2 a.m., the victim paged her boyfriend, William Bruce Maddox, and, when he returned her call, asked him to meet her later at her apartment. As the victim left the club with Gray and the defendant, the defendant produced a nine millimeter Beretta semiautomatic pistol and fired five or six shots into the air.

"When they arrived at the victim's apartment, the defendant asked if he could use the bathroom. After initially refusing the request, the victim reluctantly agreed. Gray waited downstairs. After using the bathroom, the defendant told the victim that he liked her and kissed her, which she initially returned. As the defendant continued kissing, hugging and grabbing her, however, she told him to 'chill' and 'stop.' He nonetheless persisted, forcing [the victim] into her bedroom as she continued to protest.

"The victim was unable to push past the defendant, and they fell onto the mattress on the floor. The defendant pulled down the victim's pants and underwear to her ankles, undid his trousers, produced a condom and told the victim to put it on his penis, which she refused to do. He inserted his penis into her vagina anyway. After engaging in vaginal intercourse with her for some time, he removed his penis from her vagina, grabbed her by the hair and, forcing her head toward his crotch, told her to 'lick me, lick me.' The victim refused and began screaming and crying. The defendant then recommenced vaginal intercourse.

"Shortly thereafter, the victim heard Maddox's car, which was very noisy, and told the defendant that Maddox would 'kick his ass.' Grabbing his pistol, which was on the floor, the defendant said that Maddox 'ain't gonna do shit,' looked out the window and returned to the

mattress after Maddox drove away. Maddox, seeing the darkened apartment, had assumed that the victim was not yet home and left. The defendant again resumed intercourse with the victim. He still held the gun, although it was not directly pointed at the victim's head. Rather, the gun was lying near the side of her head. After completing sexual intercourse, the defendant dressed and left. The police arrested him after receiving a complaint from the victim." *State* v. *Scott*, supra, 55 Conn. App. 662–64.

At trial, the defendant testified that he had engaged in vaginal intercourse with the victim, but insisted that the victim had consented to such conduct. The defendant also acknowledged that he had told the victim to lick his penis, but testified that he did not attempt to force the victim to do so. During closing arguments to the jury, defense counsel stated that the victim had consented to vaginal intercourse with the defendant and that the defendant merely had requested oral sex from the victim.

At the conclusion of the trial, the jury found the defendant guilty of aggravated sexual assault in the first degree based on his conduct in compelling the victim to engage in vaginal intercourse with him while he was armed with and displayed a handgun. The jury also found the defendant guilty of attempted sexual assault in the first degree based on his conduct in attempting to compel the victim to perform fellatio on him.[6]

---

[6] The defendant originally was charged with attempted aggravated sexual assault in the first degree stemming from his alleged attempt to compel the victim to perform fellatio on him while he was armed. At the conclusion of the state's case, the trial court granted the defendant's motion for a judgment of acquittal on that offense. The trial court, however, denied the defendant's motion for a judgment of acquittal on any lesser included offense, including attempted sexual assault in the first degree.

On appeal to the Appellate Court, the defendant claimed, inter alia,[7] that the trial court improperly had failed to instruct[8] the jury on the essential element of

[7] The defendant also claimed that: (1) there was insufficient evidence to support either of his convictions; and (2) the trial court improperly failed to instruct the jury on the defense of abandonment in connection with the charge of attempted sexual assault in the first degree. *State* v. *Scott,* supra, 55 Conn. App. 662. The Appellate Court rejected both of these claims; id., 664, 669; neither of which is a subject of this appeal.

[8] The trial court instructed the jury as follows: "Going to the first count . . . that is, the crime of aggravated sexual assault in the first degree . . . a person is guilty of aggravated sexual assault in the first degree when such person commits sexual assault in the first degree and, in the commission of such offense, he is armed with or displays or represents by his conduct that he possesses a deadly weapon.

"And now I will explain to you what is meant by sexual assault in the first degree. A person is guilty of sexual assault in the first degree when such person compels another person to engage in sexual intercourse by the use of force against such person or by the threat of use of force against such person, which reasonably causes such person to fear physical injury to herself.

"For you to find the defendant guilty of this charge, the state must prove each of the following elements beyond a reasonable doubt: One, that the defendant compelled another person, [the victim], to engage in sexual intercourse, and two, that the sexual intercourse was accomplished by the use of force against [the victim], or by the threat of use of force against her, which reasonably caused [the victim] to fear physical injury to herself.

"Sexual intercourse is defined in several ways in our statute. As it pertains [to] this count, it means vaginal intercourse. Penetration, however slight, is sufficient to complete vaginal intercourse and does not require the emission of semen.

* * *

"I'm going to read now count number two from the information. [The state] further accuses the defendant . . . of the crime of attempted sexual assault in the first degree and alleges that, on the same date as in count one, at the same time as in count one and in the same place as in count one, the defendant . . . acting with the kind of mental state required for the commission of the crime of sexual assault in the first degree, intentionally did something which, under the circumstances as he believed [them] to be, was an act constituting a substantial step in a course of conduct planned to culminate in his commission of the crime of sexual assault in the first degree in that he attempted to compel [the victim] to engage in the act of fellatio in violation of the pertinent statute.

"So, in this count, the defendant is charged with attempting to commit the crime of sexual assault in the first degree. Under our law, the attempt

penetration with respect to the charge of attempted sexual assault in the first degree by fellatio.[9] Id., 667. The state acknowledged that the trial court did not expressly instruct the jury regarding the penetration element of that offense, but claimed that, under the circumstances of this case, the trial court's definition

to commit a crime, even if that attempt is not successful, is just as criminal as actually committing the attempted crime. This requires, therefore, that I explain to you both the elements of the crime of sexual assault in the first degree, the crime which the state claims the defendant attempted, and the elements of the crime of attempting to commit that crime.

"Now as to the underlying crime of sexual assault in the first degree, I just finished charging you on that particular crime as part of the first count. I don't think I need to repeat it at this point. I can tell you that my instruction to you on that is the same as I would instruct you on this, the second count, with two exceptions. First . . . there was no evidence presented relative to this second count of any threat of use of force against [the victim] by the defendant. And so you will disregard that element that pertain[s] to count one only. Secondly, the second distinction between count two and the first [count] is that the sexual intercourse claimed in this count to have been attempted is fellatio rather than vaginal intercourse. And I would instruct you that fellatio is, of course, the act of obtaining sexual gratification by oral stimulation of the penis.

"Otherwise, the instructions that I have given you regarding sexual assault in the first degree apply equally to this, the second count."

[9] The defendant did not object to the trial court's instructions regarding penetration and, therefore, sought to prevail on his claim under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989). See *State* v. *Scott*, supra, 55 Conn. App. 667. Under *Golding*, a defendant can prevail on an unpreserved claim of constitutional error "only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 239–40. Because the record is adequate for consideration of the defendant's claim and because his claim implicates his due process right to a jury instruction informing the jury of the elements of the offense; see *State* v. *Leroy*, 232 Conn. 1, 7, 653 A.2d 161 (1995) ("an improper jury instruction as to an essential element of the crime charged may result in a violation of the defendant's due process right to a fair trial, and thus require the reversal of a conviction based upon that instruction"); the Appellate Court properly concluded that the defendant was entitled to appellate review of his claim.

of the term fellatio as "the act of obtaining sexual gratification by oral stimulation of the penis," coupled with the defendant's testimony that he had sought to have the victim lick his penis, rendered any instructional impropriety harmless.[10]

A majority of the Appellate Court panel rejected the defendant's claim of instructional impropriety. Id. Specifically, it concluded that the trial court's instruction was adequate because the trial court had apprised the jury that its instruction on aggravated sexual assault in the first degree, which informed the jury that penetration is necessary to establish vaginal sexual intercourse, also was applicable to attempted first degree sexual assault by fellatio.[11] Id., 668. Judge Sullivan[12] dissented, concluding that the trial court's statement to the jury regarding the applicability of the court's instructions on aggravated first degree sexual assault to attempted first degree sexual assault was not sufficient to apprise the jury of the penetration element of the latter offense. Id., 670–71 (*Sullivan, J.*, dissenting). Judge Sullivan also concluded that this impropriety was harmful; see id., 671 (*Sullivan, J.*, dissenting); because, even though the jury found that the defendant had attempted to force the victim to stimulate his penis orally; see footnote 10 of this opinion; the jury also "could erroneously have concluded that an act that requires no penetration, such as licking, constituted fellatio." *State* v. *Scott*, supra, 55 Conn. App. 671 (*Sullivan, J.*, dissenting). Under Judge Sullivan's analysis, the defendant's attempt to compel

---

[10] Implicit in the state's contention is the fact that the jury, by virtue of its guilty verdict, necessarily rejected the defendant's testimony that he did not seek to compel the victim to stimulate his penis orally, but, rather, merely requested that she do so. The defendant does not challenge this necessary implication of the jury verdict.

[11] We note that the state did not advance this theory of affirmance in the Appellate Court.

[12] Since the issuance of the Appellate Court opinion in this case, Judge Sullivan has been appointed Chief Justice of this court.

the victim to "lick" him would not subject him to liability for attempted sexual assault in the first degree by forcible *sexual intercourse* in violation of §§ 53a-70 (a) and 53a-49, but, rather, for the lesser offense of attempted sexual assault in the third degree by forcible *sexual contact*[13] in violation of General Statutes §§ 53a-72a (a) (1)[14] and 53a-49.

On appeal to this court, the defendant renews his claim of instructional impropriety with respect to the charge of attempted sexual assault in the first degree. For the reasons set forth by Judge Sullivan in his dissent from the majority opinion of the Appellate Court, we agree with the defendant that he is entitled to a new trial on that charge.

I

We turn first to the conclusion of the Appellate Court majority that the trial court adequately instructed the jury on the penetration element of attempted sexual assault in the first degree in view of the court's reference to its instructions regarding the offense of aggravated sexual assault in the first degree. We agree with the defendant that the trial court's reference back to its instructions on aggravated sexual assault in the first degree was inadequate to inform the jury of the penetra-

---

[13] General Statutes § 53a-65 (3) defines sexual contact as "any contact with the intimate parts of a person not married to the actor for the purpose of sexual gratification of the actor or for the purpose of degrading or humiliating such person or any contact of the intimate parts of the actor with a person not married to the actor for the purpose of sexual gratification of the actor or for the purpose of degrading or humiliating such person."

Under General Statutes § 53a-65 (8), " '[i]ntimate parts' [include] the genital area, groin, anus, inner thighs, buttocks or breasts."

[14] General Statutes § 53a-72a (a) provides in relevant part: "A person is guilty of sexual assault in the third degree when such person (1) compels another person to submit to sexual contact (A) by the use of force against such other person or a third person, or (B) by the threat of use of force against such other person . . . which reasonably causes such other person to fear physical injury to himself or herself . . . ."

tion requirement of attempted sexual assault in the first degree by fellatio.[15]

We note, preliminarily, that our analysis of the defendant's claim "begins with a well established standard of review. When reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper. . . . [I]n appeals involving a constitutional question, [the standard is] whether it is reasonably possible that the jury [was] misled." (Citation omitted; internal quotation marks omitted.) *State* v. *Valinski*, 254 Conn. 107, 119–20, 756 A.2d 1250 (2000).

The trial court instructed the jury with respect to the first count, namely, aggravated sexual assault in the first degree, in relevant part: "Sexual intercourse is defined in several ways in our statute. As it pertains [to] this count, *it means vaginal intercourse.* Penetration, however slight, is sufficient *to complete vaginal intercourse . . . .*" (Emphasis added.) The trial court thereafter instructed the jury with respect to the second count, namely, attempted sexual assault in the first degree: "I just finished charging you on [sexual assault in the first degree] as part of the first count. I don't

---

[15] As we have indicated, the state did not advance this position in the Appellate Court; see footnote 11 of this opinion; and, "upon due consideration," the state has "respectfully decline[d]" to do so in connection with the defendant's appeal to this court.

think I need to repeat it at this point. I can tell you that my instruction to you on that is the same as I would instruct you on this, the second count, with two exceptions. . . . [T]he second distinction between count two and the first [count] is that the sexual intercourse claimed in this count to have been attempted is *fellatio rather than vaginal intercourse.* And I would instruct you that fellatio is, of course, *the act of obtaining sexual gratification by oral stimulation of the penis.*"[16] (Emphasis added.) The trial court did not inform the jury that penetration also is a requirement of the crime of sexual assault in the first degree by fellatio.

A careful examination of the relevant portion of the trial court's instructions; see footnote 8 of this opinion; persuades us that the jury was not likely to have understood that penetration is an element of attempted first degree sexual assault by fellatio. The trial court's reference to penetration in connection with its instruction on aggravated sexual assault in the first degree was limited to its definition of *vaginal intercourse*; the court neither stated nor intimated that penetration is a requirement generally of the crime of attempted sexual assault in the first degree.[17] Thus, when the court referred back to its instructions on aggravated first degree sexual assault in connection with its instruction on attempted first degree sexual assault by fellatio,

[16] Because the word "fellatio" is not defined in our statutes, the trial court properly explained the term in accordance with its "common understanding . . . as expressed in the dictionary." (Internal quotation marks omitted.) *Oxford Tire Supply, Inc.* v. *Commissioner of Revenue Services*, 253 Conn. 683, 696, 755 A.2d 850 (2000); see also General Statutes § 1-1 (a) ("[i]n the construction of the statutes, words and phrases shall be used according to the commonly approved usage of the language"). The defendant does not challenge the propriety of the trial court's definition of that term.

[17] Indeed, as Judge Sullivan pointed out in his dissent from the majority opinion of the Appellate Court, "the statutory definition of sexual intercourse [for purposes of the offense of first degree sexual assault includes] four acts, only three of which require penetration." *State* v. *Scott*, supra, 55 Conn. App. 671 (*Sullivan, J.*, dissenting), citing General Statutes § 53a-65 (2).

there was no reason for the jury to have known that proof of penetration was necessary to find the defendant guilty of attempted first degree sexual assault by fellatio as well as of aggravated first degree sexual assault by vaginal intercourse. That reference, therefore, was insufficient to inform the jury of the penetration element of attempted first degree sexual assault by fellatio.

## II

We next address the state's claim that, in the circumstances of this case, the trial court's failure to instruct the jury that penetration is an essential element of the crime of attempted first degree sexual assault by fellatio did not deprive the defendant of a fair trial on that charge. We disagree.

The state advances two separate arguments in support of its claim that the defendant has failed to demonstrate that he is entitled to a new trial on the attempted first degree sexual assault charge. First, the state asserts that the trial court's definition of the word "fellatio" as "the act of obtaining sexual gratification by oral stimulation of the penis," coupled with the defendant's concession during his testimony that he had implored the victim to "lick him" and defense counsel's statement during closing arguments that the defendant had sought oral sex from the victim,[18] satisfied the statutory requirement of penetration. Specifically, the state asserts that "[u]nder the circumstances of this case, there is no reasonable possibility that any juror would have understood 'oral stimulation' of the penis to mean anything other than insertion of the penis into the victim's mouth."[19] We are not persuaded by this argument.

[18] Defense counsel characterized the defendant's statement to the victim seeking to have her lick his penis as a "request for oral sex" and as a request that the victim "do oral on him."

[19] In support of this claim, the state cites to the definition of the word "oral" as "of, relating to, or belonging to the mouth . . . ." Webster's Third New International Dictionary.

Although the defendant acknowledged that he sought to have the victim *lick* his penis, he did not concede that he ever attempted to have the victim *insert* his penis *into* her mouth. The act of licking a penis does not require insertion of the penis into the mouth. Thus, the jury reasonably may have found that the defendant sought to obtain "sexual gratification by oral stimulation of the penis" by having the victim lick his penis rather than having her insert his penis into her mouth. Contrary to the state's argument, therefore, there is a reasonable likelihood that, under the trial court's instructions, the jury convicted the defendant of attempted first degree sexual assault by fellatio without the required predicate finding of attempted "[p]enetration, however slight."

The state also contends that any instructional impropriety was harmless because, "properly construed, [the requirement of] 'penetration, however slight,' occurs whenever the penis is stimulated by the mouth, tongue or lips, whether or not the penis is actually inserted into the mouth." In support of this contention, the state asserts that the defendant's demand to the victim that she lick his penis is "[no] less intrusive, demeaning or traumatizing" than a demand that the victim insert his penis into her mouth and, consequently, that "[t]his court should feel warranted in construing . . . § 53a-70 (a) (1) as intending to prohibit stimulation of the penis by the mouth, tongue or lips, regardless of whether the organ is actually placed in the mouth of the person performing the sexual act." We also are unpersuaded by this argument.

"[A] jury instruction that improperly omits an essential element from the charge constitutes harmless error if a reviewing court concludes beyond a reasonable doubt that the omitted element was *uncontested and supported by overwhelming evidence*, such that the jury verdict would have been the same absent the error

. . . ." (Emphasis in original; internal quotation marks omitted.) *State* v. *Montgomery*, 254 Conn. 694, 738, 759 A.2d 995 (2000), quoting *Neder* v. *United States*, 527 U.S. 1, 17, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999). Thus, only if the defendant's attempt to compel the victim to lick his penis satisfies the penetration requirement of the offense of first degree sexual assault by fellatio would the trial court's failure to instruct the jury regarding that requirement be harmless beyond a reasonable doubt in light of the defendant's own testimony that he told the victim to lick his penis.[20]

Our resolution of this issue is guided by well established principles. "We have long held that [c]riminal statutes are not to be read more broadly than their language plainly requires . . . ." (Internal quotation marks omitted.) *State* v. *Crowell*, 228 Conn. 393, 400, 636 A.2d 804 (1994). Thus, we begin with the proposition that "[c]ourts must avoid imposing criminal liability where the legislature has not *expressly* so intended . . . and ambiguities are ordinarily to be resolved in favor of the defendant." (Citation omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Harrell*, 238 Conn. 828, 832, 681 A.2d 944 (1996). In other words, "penal statutes are to be construed strictly and not extended by implication to create liability which no language of the act purports to create." (Internal quotation marks omitted.) *State* v. *Woods*, 234 Conn. 301, 308, 662 A.2d 732 (1995). "[T]his does not mean [however] that every criminal statute must be given the narrowest possible meaning in complete disregard of the purpose of the legislature. . . . No rule of construction . . . requires that a penal statute be strained and distorted in order to exclude conduct clearly intended

[20] As we previously have indicated; see footnote 10 of this opinion; the jury, by virtue of its guilty verdict on the count of attempted sexual assault in the first degree by fellatio, necessarily found that the defendant had attempted to compel the victim to stimulate his penis orally.

to be within its scope—nor does any rule require that the act be given the narrowest meaning. It is sufficient if the words are given their fair meaning in accord with the evident intent of [the legislature]." (Citation omitted; internal quotation marks omitted.) *Singh* v. *Singh*, 213 Conn. 637, 646, 569 A.2d 1112 (1990). "The rule that terms in a statute are to be assigned their ordinary meaning, unless context dictates otherwise; General Statutes § 1-1 (a); *State* v. *Mattioli*, [210 Conn. 573, 579, 556 A.2d 584 (1989)]; also guides our interpretive inquiry." (Internal quotation marks omitted.) *State* v. *Woods*, supra, 309.

With these principles in mind, we turn to the issue of whether the penetration element of sexual assault in the first degree by fellatio is satisfied when the victim of the sexual assault is compelled to lick the perpetrator's penis without necessarily also being compelled to insert the penis into the mouth. We conclude that it is not.

"In this case, neither the defendant nor the state argues that the word [penetration] in [General Statutes § 53a-65 (2)] is unclear or ambiguous, nor does the fact that opposing counsel contend for different meanings support such a characterization. . . . Furthermore, the text of the statute nowhere indicates that the legislature intended to assign to the word anything other than its ordinary meaning. Accordingly, in the absence of other statutory guidance, we may appropriately look to the meaning of the word as commonly expressed in the law and in dictionaries." (Citation omitted.) *State* v. *Lubus*, 216 Conn. 402, 407, 581 A.2d 1045 (1990); accord *State* v. *Woods*, supra, 234 Conn. 309.

"Penetration" is defined as "the act or process of penetrating," and "penetrate" means "to pass *into* or through" or "to extend *into* the *interior* of . . . ." (Emphasis added.) Webster's Third New International

Dictionary. Thus, under §§ 53a-70 and 53a-65 (2), it is necessary for the state to establish that the defendant intended to insert his penis *into* the victim's mouth.

The act of licking a penis does not satisfy this requirement. That act involves *extending* the tongue *from* the mouth, not *inserting* the penis *into* the mouth. The state does not seriously contest that fact, but, rather, suggests that we are not bound to follow the definition of the term "penetration" strictly in circumstances, as the state contends exist in this case, in which the act sought to be compelled is as "repulsive and abhorrent" as the forced insertion of the penis into the mouth. We do not disagree with the state's characterization of the defendant's conduct in this case. We reject the state's argument, however, because it is contrary both to the plain language of § 53a-65 (2) and to the principle that criminal statutes "must be construed strictly against the state and liberally in favor of the accused." (Internal quotation marks omitted.) *State* v. *Crowell*, supra, 228 Conn. 400.

We also are not persuaded that the interpretation urged by the state can be squared with the purpose of the phrase "penetration, however slight." This court recently had occasion to consider the purpose of that requirement in *State* v. *Albert*, 252 Conn. 795, 750 A.2d 1037 (2000), in which we stated: "Although the plain language of the statute does not specify *what* must be penetrated, the legislature, in using the phrase [p]enetration, however slight, evinced an intent to incorporate, into our statutory law, the common-law least penetration doctrine. . . . We first encounter the notion that the least penetration is sufficient to complete the crime of rape[21] in *State* v. *Shields*, 45 Conn. 256 (1877). [In that case] [t]he defendant requested that

---

[21] The common-law crime of rape has been assimilated into our state's sexual assault statutes.

the trial court charge the jury that to constitute rape actual penetration of the *body* of the woman by the insertion into her of the private parts of the accused is absolutely necessary. Id., 259. After charging as requested, the court added, but the least penetration is sufficient . . . . [This] [c]ourt affirmed the charge as correct. Id., 263. . . .

"[Thus], in . . . *Shields* . . . we upheld a jury charge that referred to penetration of the *body* . . . and stated that the least penetration doctrine is sufficient [to commit rape]." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Albert*, supra, 252 Conn. 804–805. In *Albert*, we concluded "that the public policy underlying our holding in *Shields*, namely, that the least penetration of the body is sufficient to commit rape, was to protect victims from unwanted *intrusions into the interior of their bodies* [and that] [t]he legislature endorsed this public policy through its codification of the phrase '[p]enetration, however slight' in § 53a-65 (2)." (Emphasis added.) Id., 805.

Upon application of the statutory penetration requirement in *Albert*, we concluded that, for purposes of first degree sexual assault by vaginal intercourse, the state need not prove penetration of the vagina, but, rather, penetration of the labia majora.[22] See id., 806, 809. In so concluding, we explained that a touching of the labium majora satisfies the penetration requirement of §§ 53a-70 and 53a-65 (2) "because penetration of the labia majora constitutes penetration of the body . . . ." Id., 805.

*Albert* supports our conclusion that the penetration requirement is met, for purposes of first degree sexual

---

[22] "Webster's Third New International Dictionary defines labia majora as 'the outer fatty folds bounding the vulva.' " *State* v. *Albert*, supra, 252 Conn. 798 n.5. Thus, "the labia majora form the boundaries of a fissure, or opening, associated with the female genitals." Id., 809 n.17.

assault by fellatio, when a perpetrator forcibly inserts his penis into the victim's mouth.[23] Upon proof of such conduct, both the plain language of § 53a-65 (2) and its purpose are satisfied: the forcible insertion of the penis into the victim's mouth constitutes an unwanted intrusion "into the interior of [the victim's] body." Id. The act of licking a penis, by contrast, does not satisfy the penetration element of §§ 53a-70 and 53a-65 (2): that act simply does not involve an intrusion into the interior of the body.[24] To conclude otherwise would require us to stretch the statutory language beyond its breaking point; indeed, it would require us to read the penetration element out of the statute.[25] Thus, as Judge Sullivan stated in his dissent from the majority opinion of the Appellate Court, the defendant's "conduct would constitute [attempted] sexual *contact* [under § 53a-65 (3)][26] rather than [attempted] sexual *intercourse* [under § 53a-65 (2)]." (Emphasis in original.) *State* v. *Scott*, supra, 55 Conn. App. 671 (*Sullivan, J.,* dissenting). It may be that, as a matter of policy, penetration should not be an element of sexual intercourse by fellatio. That, however, is a matter of legislative policy, and we are not free to void it by giving the term a meaning that its use in the language simply will not bear.

[23] We need not, in the present case, define with particularity where the outer boundary of the mouth lies for purposes of the penetration element of §§ 53a-70 and 53a-65 (2). Nevertheless, penetration cannot be achieved when the tongue is extended from the mouth while in contact with the penis.

[24] As we also noted in *Albert*, "the penetration, however slight language of [§ 53a-65 (2)] is a common-law carryover that was designed to . . . punish the fact, not the degree, of penetration." (Internal quotation marks omitted.) *State* v. *Albert*, supra, 252 Conn. 805. The act of licking, however, does not require *any* penetration of the mouth.

[25] When the legislature has determined that penetration is not a necessary element of sexual intercourse, it has made that determination clear: under the terms of § 53a-65 (2), sexual intercourse by cunnilingus, in contrast to sexual intercourse by vaginal intercourse, anal intercourse and fellatio, carries no penetration requirement.

[26] See footnote 13 of this opinion.

The judgment of the Appellate Court is reversed with respect to the defendant's conviction for attempted sexual assault in the first degree and the case is remanded to that court with direction to reverse in part the judgment of the trial court and to remand the case to that court for a new trial on the charge of attempted sexual assault in the first degree.

In this opinion BORDEN, NORCOTT and VERTE-FEUILLE, Js., concurred.

KATZ, J., dissenting. On appeal to the Appellate Court, the defendant claimed that the trial court improperly had failed to instruct the jury on the essential element of penetration with respect to the charge of attempted sexual assault in the first degree by fellatio in violation of General Statutes §§ 53a-70 (a) (1) and 53a-49 (a) (2). *State* v. *Scott*, 55 Conn. App. 660, 667, 740 A.2d 441 (1999). The state acknowledged that the trial court did not expressly instruct the jury regarding the penetration element of that offense, but claimed that, under the circumstances of this case, the trial court's definition of the term "fellatio" as " 'the act of obtaining sexual gratification by oral stimulation of the penis' "; id., 668; coupled with the defendant's testimony that he had sought to have the victim lick his penis, rendered any instructional impropriety harmless.

The Appellate Court rejected the defendant's claim of instructional impropriety. Id. The court concluded that the trial court's charge was adequate because it had apprised the jury that the instruction on the other charge against the defendant, aggravated sexual assault in the first degree in violation of General Statutes § 53a-70a (a) (1), informed the jury that penetration is necessary to establish vaginal sexual intercourse, and that that charge also was applicable to attempted first degree sexual assault by fellatio, the only difference being the type of intercourse charged. Id., 667–68.

In this certified appeal, the defendant reasserts his claim of instructional impropriety with respect to the charge of attempted sexual assault in the first degree by fellatio. The majority of this court concludes, contrary to the determination of the Appellate Court, that the trial court improperly failed to instruct the jury that penetration is an essential element of the crime of sexual assault in the first degree by fellatio. The majority also concludes that that impropriety was not harmless beyond a reasonable doubt. Although I agree with the majority that the trial court's reference to its prior instructions on the aggravated sexual assault charge was inadequate to inform the jury of the penetration requirement under the attempted sexual assault charge, I respectfully disagree with its determination as to harmlessness.

The state acknowledges that the trial court did not instruct the jury that penetration is a requirement of the crime of sexual assault in the first degree by fellatio. It claims, however, that, in the circumstances of this case, that failure did not deprive the defendant of a fair trial. Specifically, the state claims that any instructional impropriety was harmless in light of the defendant's testimony that he sought to have the victim lick his penis. I agree with the state.

The standard by which harmless error in omitted jury instructions should be measured is well settled. "A jury instruction that improperly omits an essential element from the charge constitutes harmless error if a reviewing court concludes beyond a reasonable doubt that the omitted element was *uncontested and supported by overwhelming evidence*, such that the jury verdict would have been the same absent error . . . . *Neder* v. *United States*, 527 U.S. 1, 17, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999)." (Emphasis in original; internal quotation marks omitted.) *State* v. *Davis*, 255 Conn. 782, 794, 772 A.2d 559 (2001). Therefore, I agree with

the majority that, "if the defendant's attempt to compel the victim to lick his penis satisfies the penetration requirement of the offense of first degree sexual assault by fellatio . . . the trial court's failure to instruct the jury regarding that requirement [was] harmless beyond a reasonable doubt in light of the defendant's own testimony that he told the victim to lick his penis."[1]

Resolution of this issue is guided by well established principles. "We have long held that criminal statutes are not to be read more broadly than their language plainly requires . . . ." (Internal quotation marks omitted.) *State* v. *Crowell*, 228 Conn. 393, 400, 636 A.2d 804 (1994). "[A]lthough we recognize the fundamental principle that [penal] statutes are to be construed strictly, it is equally fundamental that the rule of strict construction does not require an interpretation which frustrates an evident legislative intent. . . . *State* v. *Burns*, 236 Conn. 18, 26–27, 670 A.2d 851 (1996)." (Internal quotation marks omitted.) *State* v. *Ledbetter*, 240 Conn. 317, 330, 692 A.2d 713 (1997). "[C]onstruction should not exclude common sense so that absurdity results and the evident design of the legislature is frustrated. *State* v. *Pastet*, 169 Conn. 13, 21–22, 363 A.2d 41, cert. denied, 423 U.S. 937, 96 S. Ct. 297, 46 L. Ed. 2d 270 (1975). If two constructions of a statute are possible, we will adopt the one that makes the statute effective and workable, not the one leading to difficult and bizarre results. *Muller* v. *Town Plan & Zoning Commission*, 145 Conn. 325, 331, 142 A.2d 524 (1958)." *State* v. *McFarland*, 36 Conn. App. 440, 446, 651 A.2d 285 (1994), cert. denied, 232 Conn. 916, 655 A.2d 259 (1995).

Moreover, even where a criminal statute is at issue, this court has shown a "disinclination to interpret stat-

---

[1] The jury, by virtue of its guilty verdict on the charge of attempted sexual assault in the first degree by fellatio, necessarily found that the defendant had attempted to compel the victim to stimulate his penis orally.

utes in a vacuum. . . . Where a court possesses clues to the meaning of a statute, there certainly can be no rule of law which forbids [their] use, however clear the words may appear on superficial examination." (Citation omitted; internal quotation marks omitted.) *State* v. *Golino,* 201 Conn. 435, 442, 518 A.2d 57 (1986). No rule of construction demands that a penal statute be strained and distorted in order to exclude conduct clearly intended to be within its scope. "It is sufficient if the words are given their fair meaning in accord with the evident intent of [the legislature]." (Internal quotation marks omitted.) *Singh* v. *Singh,* 213 Conn. 637, 646, 569 A.2d 1112 (1990).

Against this background, we must decide whether the penetration requirement of forcible sexual intercourse by fellatio is satisfied when the victim of the sexual assault is compelled to lick the perpetrator's penis without necessarily also being compelled to insert the penis into her mouth. Contrary to the majority, I would conclude that it is. In other words, I do not distinguish between a penis that is stimulated orally inside the mouth and one that is stimulated orally by the tongue protruding beyond the lips.

It is well established that, when determining the meaning of a word, "it is appropriate to look to the common understanding of the term as expressed in a dictionary." *State* v. *Indrisano,* 228 Conn. 795, 809, 640 A.2d 986 (1994). "Penetration" generally is defined as "the act or process of penetrating," and "penetrate" means "to pass into or through . . . to extend into the interior of . . . ." Webster's Third New International Dictionary. As we recently have indicated, however, "the plain language of [General Statutes § 53a-65 (2)] does not specify *what* must be penetrated . . . ." (Emphasis in original.) *State* v. *Albert,* 252 Conn. 795, 804, 750 A.2d 1037 (2000).

I agree with the state that the penetration requirement is met when an accused, by the use or threat of use of force, compels a victim to extend her tongue outside the mouth's customary boundary, that is, the lips, for the purpose of forcing the victim to take the accused's penis onto her tongue. The tongue is an integral part of the mouth, in essence, its floor. Indeed, it is difficult to imagine an act of fellatio without the use of the tongue. In these particular circumstances, it is reasonable to treat the usual boundary of the mouth as having been extended by the reach of the victim's tongue beyond the lips. When the forcible extension of the victim's tongue from its usual place within the oral cavity is viewed as extending the boundary of the mouth, the conduct of the accused in compelling the victim to lick his penis reasonably may be considered a violation, or penetration, of the boundary of the mouth as so extended.

This conclusion is supported by the fact that "the legislature, in using the phrase '[p]enetration, however slight,' [in § 53a-65 (2)] evinced an intent to incorporate, into our statutory law, the common-law least penetration doctrine." Id. Like the majority, I turn to the explanation we provided in *Albert.* "We first encounter the notion that the least penetration is sufficient to complete the crime of rape[2] in *State* v. *Shields*, 45 Conn. 256 (1877). [In *Shields*, the] defendant requested that the trial court charge the jury that to constitute rape actual penetration of the *body* of the woman by the insertion into her of the private parts of the accused is absolutely necessary. Id., 259. After charging as requested, the court added, but the least penetration is sufficient . . . . Id. [This court] affirmed the charge as correct. Id., 263. . . . [Thus], in . . . *Shields* . . . we upheld a jury charge that referred to penetration of the

---

[2] The crime of rape has been assimilated into our state's sexual assault statutes.

*body* . . . id., 259; and stated that the least penetration is sufficient [to commit rape]. . . . *We conclude that the public policy underlying our holding in Shields, namely, that the least penetration of the body is sufficient to commit rape, was to protect victims from unwanted intrusions into the interior of their bodies.* The legislature endorsed this public policy through its codification of the phrase [p]enetration, however slight in § 53a-65 (2)." (Citation omitted; emphasis altered; internal quotation marks omitted.) *State* v. *Albert,* supra, 252 Conn. 804–805.

The public policy underlying the least penetration doctrine of § 53a-65 (2), which defines the term "sexual intercourse" for purposes of § 53a-70, would be furthered by a determination that the conduct at issue in the present case satisfies the penetration requirement of that statutory provision. Although the tongue may be extended from its usual location inside the oral cavity, it is a part of the mouth's *internal* structure. Thus, when an attacker compels his victim to lick his penis by forcibly removing the victim's tongue from inside her mouth, the gross nature of that unwanted bodily intrusion is obvious. As we have stated, "[t]he penetration, however slight language of [§ 53a-65 (2)] is a common-law carryover that was designed to . . . punish the fact, not the degree, of penetration." (Internal quotation marks omitted.) Id., 805. A conclusion that the defendant's conduct here does not satisfy the least penetration principle would fly in the face of common sense and, even more importantly, the clear public policy underlying our sexual assault statutes generally and § 53a-65 (2) specifically. See, e.g., *State* v. *Cobb,* 251 Conn. 285, 387, 743 A.2d 1 (1999), cert. denied, 531 U.S. 84, 121 S. Ct. 106, 148 L. Ed. 2d 64 (2000) ("This court does not interpret statutes in a vacuum, nor does it refuse to consider matters of known historical fact. . . . And although criminal statutes are strictly con-

strued, it is equally fundamental that the rule of strict construction does not require an interpretation which frustrates an evident legislative intent." [Internal quotation marks omitted.]).

I recognize that the common definition of fellatio is oral stimulation of the penis and that fellatio can exist in the absence of penetration of the oral cavity. By adding to that definition the requirement of penetration, the legislature made mere placement of the victim's mouth on the penis insufficient as a basis upon which to convict under § 53a-70. In my view, the element of penetration is satisfied by penetration of the oral cavity, that is when the victim has been forced to extend her tongue outside the mouth's customary boundary, the lips. The extension of the victim's tongue from its customary home extends the boundary of the mouth, and the placement of the penis on the tongue constitutes actual penetration. When the defendant forcibly touches the victim's tongue with his penis, whether the victim's tongue happens to be inside or outside the mouth when the unwanted touching occurs, the penetration requirement is satisfied. A statute should not be interpreted to thwart its purpose simply because the legislature's purpose could have been more clearly stated. See *Frillici* v. *Westport*, 231 Conn. 418, 435–36, 650 A.2d 557 (1994). " '[W]e will assume that the legislature intended to accomplish a reasonable and rational result.' " *State* v. *Brown*, 235 Conn. 502, 516, 668 A.2d 1288 (1995), quoting *State* v. *Breton*, 235 Conn. 206, 226, 663 A.2d 1026 (1995). It is inconceivable to me that the legislature intended to draw the distinction that the defendant makes and the majority endorses.[3]

Accordingly, I respectfully dissent.

---

[3] "We are not satisfied to be right, unless we can prove others to be quite wrong." W. Hazlitt, Note-Books (1856) p. 236. Therefore, I look to the legislature to *clarify* the meaning of penetration in accordance with this dissent.